BOARD OF EDUCATION of the City of Rugby, a Municipal Corporation, and O. L. Casady as Treasurer of the Board of Education of Said Corporation, v. HENRY NELSON, F. T. Gronvold, and A. H. Jones.

(157 N. W. 664.)

Action at law — school district — treasurer — official bond — sureties — loss — depositary — bank — failure of — liability of treasurer —deposits — made under order of board.

1. Action at law to recover of the Rugby School District treasurer and sureties on his official bond for a balance of $2,521 and interest, lost by the district through the failure of its depositary, the defunct First National Bank of Rugby. *Held:* That the treasurer in depositing the school funds therein upon order of the district board, and in compliance with the statutes, is not liable upon his official bond where the school funds are lost to the district.

**School board — depositaries — designation of — duty and province — bonds.**

2. The designation of depositaries, and requiring of bonds from them, was the duty and province of the school board, not the treasurer.

**School board — compliance with law — treasurer — may assume — deposits — bonds.**

3. Under the record the treasurer was justified in assuming that the board had complied with the law in the designating of depositaries, and had exacted sufficient depositary bonds.

**Designation of depository — continues.**

4. The original designation of depositaries in 1905 was sufficient to continue said bank as a legal depositary and without a redesignation in July, 1907.

**Sinking fund — loss of — deposit — order of board — made under — bank once designated — treasurer — may presume continuance.**

5. The loss arises principally from the deposit of a sinking fund as to which the school board is empowered to order a deposit to be made in any depositary therefor and, which depositary may be designated after advertisement and at any time. The treasurer had the right to rely upon the presumption that said bank had been designated as a depositary for such funds.

**School treasurer — control of funds — limited — board selects depositaries — school funds — authority over — with school boards — treasurer — not insurer — exonerated.**

6. School treasurers have not the control of the district funds except in a limited way for the purpose of depositing them in depositaries selected by the board. The authority over school funds is with the district board since the enactment of depositary statutes; and since which time the treasurer is no longer an insurer of the return of school funds to the district after their deposit as provided by law. The facts exonerate the treasurer and his bondsmen from liability.

Opinion filed March 24, 1916.

An appeal from a judgment of the District Court of Pierce County, *Burr*, J., dismissing this action.

Affirmed.

*Campbell & Jongewaard,* for appellants.

The school board, under the law, had the power and it was its duty to designate depositaries where school funds could be deposited by the district treasurer. Such a designation was made in 1905, and bank designated, gave a bond as provided by law. Does such designation exempt the treasurer elected in 1908 and his bondsmen from liability?

"All funds shall be deposited by the treasurer in such bank or banks as shall have been designated, in accordance with this article, as hereinafter provided." Comp. Laws 1913, § 1472.

The school board shall make such designation in July of each odd-numbered year, and the clerk shall advertise for proposals. Comp. Laws 1913, §§ 1473, 1474, 1476–1482, 1485, 1486.

The matter of designating depositaries and of making deposits of school funds is largely if not wholly governed by statute, and it is indeed questionable if the designation of depositaries for 1905 continues over and includes 1907. 13 Cyc. 1813 et seq.

The law has manifested an intent to guard with utmost care the funds, and to hold the treasurer to strict accountability. Comp. Laws 1913, §§ 1165, 1166, 1171, 1218, 1347, 1352, 1472, 1477, 1481, 1482, 1485, 1488, supra; Mecklenburg County v. Beales, 111 Va. 691, 36 L.R.A.(N.S.) 289, 69 S. E. 1032; 13 Cyc. 814, note 70; State ex rel. Kuhlemeier v. Rhein, 149 Iowa, 76, 127 N. W. 1079, and cases cited; Van Vlissingen v. Clay County, 54 Minn. 555, 56 N. W. 252; State ex rel. Irrigators' Bank v. Whipple, 60 Neb. 650, 83 N. W. 921; Manitowoc County v. Truman, 91 Wis. 1, 64 N. W. 307; State ex rel. Roberts v. Lawrence, 80 Kan. 707, 103 Pac. 839; Schouweiler v. Allen, 17 N. D. 510, 117 N. W. 866; Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; Treadway v. Schnauber, 1 Dak. 236, 46 N. W. 464; 20 Am. & Eng. Enc. Law, 1142, 1183, 1184, 1209, 1210, 1217; 25 Am. & Eng. Enc. Law, 59; Mechem, Agency, 273, 276, 291, 292.

The treasurer can only deposit on the terms and conditions of the statute. Mecklenburg County v. Beales, 36 L.R.A.(N.S.) 285, and note; Wilson v. People, 22 L.R.A. 449, note.

He is exempted from liability only upon compliance with the statute. State v. United States Fidelity & G. Co. 81 Kan. 660, 26 L.R.A. (N.S.) 865, 106 Pac. 1040; 13 Cyc. 813–815, and cases cited; Van Vlissingen v. Clay County, 54 Minn. 555, 56 N. W. 252; St. Louis County v. American Loan & T. Co. 75 Minn. 489, 78 N. W. 113; St. Louis County v. American Loan & T. Co. 67 Minn. 112, 69 N. W. 704; St. Louis County v. Security Bank, 75 Minn. 174, 77 N. W. 815.

The law, requiring the board to advertise for bids for depositaries, is

mandatory, and all acts done without compliance with the statute are illegal. Comp. Laws 1913, §§ 1473, 1474.

The legislature did not intend a "continuance" or "holding over" of a depositary, merely because once designated. There is a marked distinction between public and private bonds, the rules and principles applicable to the former, not the latter, are applicable here. Mecklenburg County v. Beales, 111 Va. 691, 36 L.R.A.(N.S.) 285, 69 S. E. 1032; Throop, Pub. Off. 202, 203; St. Louis County v. Security Bank, 75 Minn. 174, 77 N. W. 815.

It cannot be said that one holds over, without express, unequivocal expression to that effect by the legislature. 13 Cyc. 812, 813; Throop, Pub. Off. 308, 323; Territory ex rel. Peterson v. Hauxhurst, 3 Dak. 205, 14 N. W. 432; State ex rel. Wood v. Sheldon, 8 S. D. 525, 67 N. W. 613; State ex rel. Wood v. Smedley, 8 S. D. 531, 67 N. W. 1151; State ex rel. Lavin v. Bacon, 14 S. D. 284, 85 N. W. 225; Re Supreme Ct. Vacancy, 4 S. D. 532, 57 N. W. 495.

The contract of the sureties is strictly construed in favor of the sureties, to impose upon the sureties only those burdens clearly within its terms. 32 Cyc. 73; St. Louis County v. Security Bank, 75 Minn. 174, 77 N. W. 815; Fremont County v. Fremont County Bank, 138 Iowa, 167, 115 N. W. 928; Baker City v. Murphy, 30 Or. 405, 35 L.R.A. 88, 42 Pac. 133; Throop, Pub. Off. 205, 207, 212, 213, 339.

The presumption that officers perform their duties is in any event a mere rebuttable presumption. To hold here that defendant had a right to believe and act upon such presumption from the evidence offered, and to take it for granted that the officers had performed all precedent and mandatory conditions, would be to make such presumption conclusive.

The purpose of the law is to bind and estop the district and make it answerable for the acts, or failure to act, of the board and clerk. Rev. Codes 1905, §§ 7315, 7317, Comp. Laws 1913, §§ 7934, 7936; 22 Am. & Eng. Enc. Law, 1270; 11 Am. & Eng. Enc. Law, 434; Goose River Bank v. Willow Lake School Twp. 1 N. D. 26, 26 Am. St. Rep. 605, 44 N. W. 1002; St. Louis County v. Security Bank, 75 Minn. 174, 77 N. W. 815; State v. United States Fidelity & G. Co. 81 Kan. 660, 26 L.R.A.(N.S.) 865, 106 Pac. 1040; Capital Bank v. School Dist. 1 N. D. 479, 48 N. W. 363; Engstad v. Dinnie, 8 N. D. 12,

33 N. D.—30.

76 N. W. 292; State v. School Dist. 18 N. D. 616, 138 Am. St. Rep. 787, 120 N. W. 555; National L. Ins. Co. v. Mead, 13 S. D. 37, 48 L.R.A. 785, 79 Am. St. Rep. 876, 82 N. W. 78; Flagg v. School Dist. 4 N. D. 45, 25 L.R.A. 363, 58 N. W. 499; National L. Ins. Co. v. Board of Education, 10 C. C. A. 637, 27 U. S. App. 244, 62 Fed. 778; Board of Education v. McLean, 45 C. C. A. 658, 106 Fed. 817.

To sustain defendants here would be to lay down the rule that the public is estopped to show its agent had no authority by the unauthorized act itself to bind it and make it answerable for unauthorized acts of other public agents. Smith v. Lawrence, 2 S. D. 185, 49 N. W. 7; Flagg v. School Dist. 4 N. D. 30, 25 L.R.A. 363, 58 N. W. 499; Coler & Co. v. Dwight School Twp. 3 N. D. 249, 28 L.R.A. 649, 55 N. W. 587; Billingsley v. Hiles, 6 S. D. 445, 61 N. W. 687; National L. Ins. Co. v. Mead, 13 S. D. 37, 48 L.R.A. 785, 79 Am. St. Rep. 876, 82 N. W. 78; Meyer v. School Dist. 4 S. D. 420, 57 N. W. 68; Rev. Codes 1905, §§ 923, 927, 7300, 7301, Amended 1907, Comp. Laws 1913, §§ 1475, 1479, 7919, 7920; Emmons County v. First Nat. Bank, 9 N. D. 591, 84 N. W. 379; Rochford v. School Dist. 19 S. D. 435, 103 N. W. 763; State, Durant, Prosecutor, v. Jersey City, 25 N. J. L. 309; 25 Am. & Eng. Enc. Law, 43; Hinton v. School Dist. 12 Kan. 573; 20 Am. & Eng. Enc. Law, 1214; Galvin v. Tibbs, H. & Co. 17 N. D. 600, 119 N. W. 39; State v. Flagstad, 25 S. D. 337, 126 N. W. 585; State v. Gottlieb, 21 N. D. 179, 129 N. W. 460; Goss v. Herman, 20 N. D. 295, 127 N. W. 78; 30 Am. & Eng. Enc. Law, 90; Fisher v. Betts, 12 N. D. 197, 96 N. W. 132; Sykes v. Beck, 12 N. D. 242, 96 N. W. 844; State v. Callahan, 18 S. D. 150, 99 N. W. 1100; Yokell v. Elder, 20 N. D. 142, 127 N. W. 514; Holtan v. Beck, 20 N. D. 5, 125 N. W. 1048; Strecker v. Railson, 16 N. D. 68, 8 L.R.A.(N.S.) 1099, 111 N. W. 612; Putnam v. Custer County, 25 S. D. 542, 127 N. W. 641; Amundson v. Wilson, 11 N. D. 193, 91 N. W. 37; McManus v. Commow, 10 N. D. 340, 87 N. W. 8; Garland v. Foster County State Bank, 11 N. D. 374, 92 N. W. 452; Howser v. Pepper, 8 N. D. 484, 79 N. W. 1018; Pickton v. Fargo, 10 N. D. 469, 88 N. W. 90; Lee v. Crawford, 10 N. D. 482, 88 N. W. 97; Eaton v. Bennett, 10 N. D. 346, 87 N. W. 188; Sheets v. Paine, 10 N. D. 103, 86 N. W. 117; Mears v. Smith, 19 S. D. 79, 102 N. W. 295; Taugher v. Northern P. R. Co. 21 N. D. 111, 129 N. W. 747; Brynjolfson v. Dagner, 15 N. D.

332, 125 Am. St. Rep. 595, 109 N. W. 320; Enderlin Invest. Co. v. Nordhagen, 18 N. D. 517, 123 N. W. 390; 25 Am. & Eng. Enc. Law, 962–964; Brown v. Bon Homme, 1 S. D. 216, 46 N. W. 173; 17 Cyc. 507.

The board and clerk are mere public agents. 20 Am. & Eng. Enc. Law, 1209, 1210, 1217; Schouweiler v. Allen, 17 N. D. 510, 117 N. W. 866; Gordon v. Vermont Loan & T. Co. 6 N. D. 454, 71 N. W. 556.

One dealing with an agent must ascertain his authority, and in this respect acts at his peril. Mechem, Agency, 273, 276, 291, 292; Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; 20 Am. & Eng. Enc. Law, 1142, 1183, 1184; National L. Ins. Co. v. Mead, 13 S. D. 37, 48 L.R.A. 785, 79 Am. St. Rep. 876, 82 N. W. 78, 13 S. D. 342, 83 N. W. 335; Board of Education v. McLean, 45 C. C. A. 658, 106 Fed. 817; 22 Am. & Eng. Enc. Law, 1184, 1270; Swift v. Williamsburgh, 24 Barb. 427; Johnson v. Indianapolis, 16 Ind. 227.

One cannot refuse obedience, and not comply with an order or direction or mandate, and then assert it as a defense. 31 Cyc. 1451; Rev. Codes 1905, §§ 930, 936, 5773; Comp. Laws 1913, §§ 1482, 1488, 6341; 1 Am. & Eng. Enc. Law, 2d ed. 1058; Kennedy v. State Bank, 22 N. D. 69, 132 N. W. 657; Queen City F. Ins. Co. v. First Nat. Bank, 18 N. D. 603, 22 L.R.A.(N.S.) 509, 120 N. W. 545.

A board can only act as such at a proper meeting.

The evidence does not show a meeting or a record of one held for the purpose of making such deposit designation. The evidence in this respect shows merely an order, not a resolution nor public record. Rev. Codes 1905, §§ 808, 810, 906, Comp. Laws 1913, §§ 1162, 1164, 1353; 20 Am. & Eng. Enc. Law, 1210, 1212; 23 Am. & Eng. Enc. Law, 589; 25 Am. & Eng. Enc. Law, 56; Emmons County v. First Nat. Bank, 9 N. D. 583, 84 N. W. 379; Rochford v. School Dist. 19 S. D. 435, 103 N. W. 763; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434; State ex rel. Moore v. Archibald, 5 N. D. 359, 66 N. W. 234.

One has the right to cross-examine his own witness when for the first time, and on the witness stand, he displays hostility. 40 Cyc. 2559, 2560, 2476, note 33.

The legislature has made its orders and commands *direct* to the treasurer, and no other authority or power is given to any one, to control the acts of the treasurer. 13 Cyc. 813, and cases cited, 814 and note;

Van Vlissingen v. Clay County, 54 Minn. 555, 56 N. W. 252; State ex rel. Irrigators' Bank v. Whipple, 60 Neb. 650, 83 N. W. 921; State ex rel. Kuhlemeier v. Rhein, 149 Iowa, 76, 127 N. W. 1079; Comp. Laws 1913, §§ 1472, 1477, 1481, 1482, 1485, 1486, 1488.

The statutes to which reference has been made, and especially the word "shall" as there used, are mandatory. State ex rel. Roberts v. Lawrence, 80 Kan. 707, 103 Pac. 839; Van Vlissingen v. Clay County, 54 Minn. 555, 56 N. W. 252; Manitowoc County v. Truman, 91 Wis. 1, 64 N. W. 307; 13 Cyc. 814, notes 71, 72 and 76, 815, note 84 and cases cited; 21 Am. & Eng. Enc. Law, 1214; Bosard v. Grand Forks, 13 N. D. 587, 102 N. W. 164; 30 Am. & Eng. Enc. Law, 90, 91; Amundson v. Wilson, 11 N. D. 193, 91 N. W. 37; Putnam v. Custer County, 25 S. D. 542, 127 N. W. 641; 22 Am. & Eng. Enc. Law, 1270; Pickton v. Fargo, 10 N. D. 469, 88 N. W. 90; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434; 28 Cyc. 344; 4 Am. & Eng. Enc. Law, 606; 20 Am. & Eng. Enc. Law, 1141, 1142, 1157, 1162, 1164, 1165, 1167, 1168, 1174, 1210, 1214, 1217; 23 Am. & Eng. Enc. Law, 365; 25 Am. & Eng. Enc. Law, 34, notes 6, 9, 10, 13, 41, 42; Goose River Bank v. Willow Lake School Twp. 1 N. D. 26, 26 Am. St. Rep. 605, 44 N. W. 1002; Stern v. Fargo, 18 N. D. 289, 26 L.R.A.(N.S.) 665, 122 N. W. 403; Hughes v. Horsky, 18 N. D. 474, 122 N. W. 799; State v. School Dist. 18 N. D. 616, 138 Am. St. Rep. 787, 120 N. W. 555; Bosard v. Grand Forks, 13 N. D. 587, 102 N. W. 164; Sheets v. Paine, 10 N. D. 103, 86 N. W. 117; Engstad v. Dinnie, 8 N. D. 1, 76 N. W. 292; Roberts v. Fargo, 10 N. D. 239, 86 N. W. 726; Sim v. Rosholt, 16 N. D. 77, 11 L.R.A.(N.S.) 372, 112 N. W. 50; Alstad v. Sim, 15 N. D. 629, 109 N. W. 66; Baker v. La Moure, 21 N. D. 140, 129 N. W. 464; Emmons County v. First Nat. Bank, 9 N. D. 591, 84 N. W. 379; State ex rel. Laird v. Gang, 10 N. D. 331, 87 N. W. 5; Capital Bank v. School Dist. 1 N. D. 490, 48 N. W. 363; Gull River Lumber Co. v. School Dist. 1 N. D. 500, 48 N. W. 427; Brown v. Bon Homme County, 1 S. D. 216, 46 N. W. 173; Graves v. Jasper School Twp. 2 S. D. 414, 50 N. W. 904; Milbank v. Western Surety Co. 21 S. D. 261, 111 N. W. 561; Huston v. Sioux Falls Twp. 17 S. D. 260, 96 N. W. 88; State ex rel. La Follette v. Chicago, M. & St. P. R. Co. 16 S. D. 517, 94 N. W. 406; Whittaker v. Deadwood, 23 S. D. 538, 139 Am. St. Rep. 1076, 122 N. W. 590; Hardy v. Purington, 6 S. D. 382,

61 N. W. 158; Van Vlissingen v. Clay County, 54 Minn. 555, 56 N. W. 252; St. Louis County v. American Loan & T. Co. 67 Minn. 112, 69 N. W. 704; St. Louis County v. American Loan & T. Co. 75 Minn. 489, 78 N. W. 113.

The board can only act as such at a regular meeting, or at a special meeting properly called. 20 Am. & Eng. Enc. Law, 1210, 1212; 23 Am. & Eng. Enc. Law, 56, 366; Emmons County v. First Nat. Bank, 9 N. D. 583, 84 N. W. 379; Rochford v. School Dist. 19 S. D. 435, 103 N. W. 763; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434; State ex rel. Moore v. Archibold, 5 N. D. 359, 66 N. W. 234; State, Durant, Prosecutor, v. Jersey City, 25 N. J. L. 309; 25 Am. & Eng. Enc. Law, 42.

Defects in the record cannot be cured by evidence *aliunde*. Lee v. Crawford, 10 N. D. 482, 88 N. W. 97; Eaton v. Bennett, 10 N. D. 346, 87 N. W. 188; Sheets v. Paine, 10 N. D. 103, 86 N. W. 117; Pickton v. Fargo, 10 N. D. 469, 88 N. W. 90; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434; 20 Am. & Eng. Enc. Law, 1214; Coler & Co. v. Dwight School Twp. 3 N. D. 249, 28 L.R.A. 649, 55 N. W. 587; 28 Cyc. 344; 17 Cyc. 507.

The public cannot be estopped where a public record is provided for and required, and one is bound to ascertain both fact and extent of agency. Mechem, Agency, 273, 276, 291, 292; Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; 11 Am. & Eng. Enc. Law, 434; Engstad v. Dinnie, 8 N. D. 12, 76 N. W. 292; Flagg v. School Dist. 4 N. D. 45, 25 L.R.A. 363, 58 N. W. 499; National L. Ins. Co. v. Board of Education, 10 C. C. A. 637, 27 U. S. App. 244, 62 Fed. 778; National L. Ins. Co. v. Mead, 13 S. D. 37, 48 L.R.A. 785, 79 Am. St. Rep. 786, 82 N. W. 78; Board of Education v. McLean, 45 C. C. A. 658, 106 Fed. 817; Santa Cruz v. Waite, 39 C. C. A. 106, 98 Fed. 398; 20 Am. & Eng. Enc. Law, 1183, 1184; Goose River Bank v. Willow Lake School Twp. 1 N. D. 26, 26 Am. St. Rep. 605, 44 N. W. 1002; Swift v. Williamsburgh, 24 Barb. 427; Johnson v. Indianapolis, 16 Ind. 227.

Presumption cannot supply the requirement of a *record*. 22 Am. & Eng. Enc. Law, 1270; National L. Ins. Co. v. Mead, 13 S. D. 37, 48 L.R.A. 785, 79 Am. St. Rep. 786, 82 N. W. 78; St. Louis County v. Security Bank, 75 Minn. 174, 77 N. W. 815; Hennepin County v.

State Bank, 64 Minn. 180, 66 N. W. 143; State v. United States Fidelity & G. Co. 26 L.R.A.(N.S.) 865, and note.

There could be and was no ratification in this case. State ex rel. Diebold Safe & Lock Co. v. Getchell, 3 N. D. 243, 55 N. W. 585; Fox v. Walley, 13 N. D. 610, 102 N .W. 161; Morris v. Ewing, 8 N. D. 99, 76 N. W. 1047; Capital Bank v. School Dist. 1 N. D. 479, 48 N. W. 363; Gull River Lumber Co. v. School Dist. 1 N. D. 511, 48 N. W. 427; 25 Am. & Eng. Enc. Law, 50, 51, 60; 1 Am. & Eng. Enc. Law, 1183, 1184, 1199; Goose River Bank v. Willow Lake School Twp. 1 N. D. 26, 26 Am. St. Rep. 605, 44 N. W. 1002; 31 Cyc. 1248, 1250, 1251, 1260–1262; 35 Cyc. 953, 962–964; 20 Am. & Eng. Enc. Law, 1180–1183, 1209, 1210; Mechem, Agency, 111, 112, 114, 115, 117, 121, 125, 136, 173, 378; 28 Cyc. 676–678; 30 Am. & Eng. Enc. Law, 96; 23 Am. & Eng. Enc. Law, 322, 370.

*Albert E. Coger,* for respondents.

It is clear that the members of the board, the attorney who drafted the resolution, and the treasurer, did not doubt that the board had full power to determine where the deposit of funds of the school district should be made. This resolution was delivered to the treasurer, and he was orally directed where to make deposits. A depositary is a quasi public officer, and holds over. Laws of 1905, §§ 1472, 1488, ¶¶ 1, 17 of chap. 105; Comp. Laws 1913, § 1474; Hall County v. Thomssen, 63 Neb. 787, 89 N. W. 393; Re State Treasurer's Settlement (Bartley v. Meserne) 51 Neb. 116, 36 L.R.A. 846, 70 N. W. 532.

The general rule is, in the absence of a contrary statute, that public officers hold over until their successors are elected and qualified. St. Louis County v. Security Bank, 75 Minn. 174, 77 N. W. 817; 23 Am. & Eng. Enc. Law, 412.

The rule that the treasurer is an insurer applies only in case that the officer is, by the law, made the depositary. This is not the condition in this state. Laws 1905; United States v. Prescott, 3 How. 578, 11 L. ed. 734; Bath v. McBride, 163 App. Div. 714, 148 N. Y. Supp. 836; United States v. Thomas, 15 Wall. 337, 21 L. ed. 89; State v. Houston, 78 Ala. 576, 56 Am. Rep. 59; York County v. Watson, 15 S. C. 1, 40 Am. Rep. 675; School Dist. v. Stoner, 16 Montg. Co. L. Rep. 107; Rose v. Hatch, 5 Iowa, 149; Cumberland County v. Pennell, 69 Me. 357, 31 Am. Rep. 284; Missoula County v. McCormick, 4 Mont. 115,

5 Pac. 287; Albany County v. Dorr, 25 Wend. 440; Great Falls v. Hanks, 21 Mont. 83, 52 Pac. 785; State v. Gramm, 7 Wyo. 329, 40 L.R.A. 690, 52 Pac. 533; Healdsburg v. Mulligan, 113 Cal. 205, 33 L.R.A. 461, 45 Pac. 337; Wilson v. People, 19 Colo. 199, 22 L.R.A. 449, 41 Am. St. Rep. 243, 34 Pac. 944; Livingston v. Woods, 20 Mont. 91, 49 Pac. 437; State use of Overland County v. Copeland, 96 Tenn. 296, 31 L.R.A. 844, 54 Am. St. Rep. 840, 34 S. W. 427; Hobbs v. United States, 17 Ct. Cl. 189; Rowlett v. White, 18 Tex. Civ. App. 688, 46 S. W. 372; Roberts v. Laramie County, 8 Wyo. 177, 56 Pac. 915; Peck v. James, 3 Head, 75; Perley v. Muskegon County, 32 Mich. 132, 20 Am. Rep. 637.

The governing board here is the board of education. Its powers and duties are clearly defined by statute. Stephens v. Ludlow, 159 Ky. 729, 169 S. W. 473; Com. v. Godshaw, 92 Ky. 435, 17 S. W. 737.

To the board is committed the care, custody, and control of all property of the district. Comp. Laws 1913, § 1173; art. 7; Newburg v. Dickey, 164 App. Div. 791, 150 N. Y. Supp. 175; Carthage v. Frederick, 122 N. Y. 271, 10 L.R.A. 178, 19 Am. St. Rep. 490, 25 N. E. 480; Rochester v. Simpson, 134 N. Y. 417, 31 N. E. 871; Moore v. New York, 73 N. Y. 249, 29 Am. Rep. 134.

Not all of the provisions of article 7 of the act are mandatory. The board is vested with judicial discretion to select the depositary. Henry County v. Salmon, 201 Mo. 136, 100 S. W. 20; Renville County v. Gray, 61 Minn. 242, 63 N. W. 635; Hennepin County v. State Bank, 64 Minn. 180, 66 N. W. 143; Emmons County v. First Nat. Bank, 9 N. D. 583, 84 N. W. 379; 23 Am. & Eng. Enc. Law, 458; Sutherland, Stat. Constr. 447, 448; State ex rel. Cothren v. Lean, 9 Wis. 279; Kipp v. Dawson, 31 Minn. 380, 17 N. W. 961, 18 N. W. 96; Johnson v. Day, 2 N. D. 295, 50 N. W. 701.

The neglect of the clerk to copy the resolution is not fatal to its validity. Troy v. Atchison & N. R. Co. 13 Kan. 70; Dill. Mun. Corp. 5th ed. §§ 538, 554, 557, 558; State, Staats, Prosecutor, v. Washington, 45 N. J. L. 323; Higgins v. Reed, 8 Iowa, 298, 74 Am. Dec. 305.

After the failure of the bank, one of the depositaries, the board made a proof of claim to the receiver. The board thereby ratified its deposit in such bank. National L. Ins. Co. v. Board of Education, 10

C. C. A. 637, 27 U. S. App. 244, 62 Fed. 778; Bath v. McBride, 163 App. Div. 714, 148 N. Y. Supp. 836; Tillinghast v. Merrill, 151 N. Y. 135, 34 L.R.A. 678, 56 Am. St. Rep. 612, 45 N. E. 375; United States v. Thomas, 15 Wall. 337, 21 L. ed. 89.

That an estoppel can arise against a municipality is well settled. Abells v. Syracuse, 7 App. Div. 501, 40 N. Y. Supp. 333; Moore v. New York, 73 N. Y. 248, 29 Am. Rep. 134; North River Electric Light & P. Co. v. New York, 48 App. Div. 24, 62 N. Y. Supp. 726.

Goss, J.  This is an action at law to recover of the treasurer of the Rugby School District and sureties on his official bond, a balance of $2,521 and interest, due the district from the defunct First National Bank of Rugby. That institution failed holding a deposit of school moneys of $4,260 of a sinking fund with a deposit of some $2,300 of other moneys of this district, but against which that bank held approximately $3,000 of unpaid school warrants, which were offset against the deposit, leaving a balance of $2,521 due over dividends credited. Defendant Nelson was treasurer from 1906 to 1910. Before his election the school board had designated the Merchants and First National Banks of Rugby as school depositaries. Defendant's predecessor had deposits in both of them when taken over by Nelson, who allowed deposits on account to remain as they were. The First National Bank had furnished the school board with a depositary bond in the sum of $5,000, dated October 30, 1905, and which bond had been accepted by the board, and deposits made in said institution. The treasurer continued depositing in both depositaries throughout all times in question. During the last few months of 1908 the sinking fund was on order of the board deposited wholly with the First National. On June 12, 1908, Nelson received a letter bearing that date, addressed to him as school treasurer, and signed by the clerk of the district, and reading: "At an adjourned meeting of the Rugby School District No. 5 the following motion was made, seconded, and carried: 'It is moved that the school treasurer be directed to deposit all of the sinking fund now in his hands, less the amount required to pay interest on bonds July 1st, next, in the First National Bank of Rugby, North Dakota, on time deposit for six months.' " And the minutes of the meeting of said school board of said city, among other matters, contained the

portion above quoted. This resolution was not immediately complied with by the treasurer, but instead matters were permitted to remain as they were, except it appears that the treasurer afterward spoke to the members of the board and its clerk about exacting an additional bond from the First National Bank if the sinking fund was to be transferred to it, but the board informed him there was a bond on file, and did nothing toward requiring any additional bonds. Thus matters stood on September 30, 1908, when the members of the board collectively came to Nelson, and personally delivered him the following order that they told him they had that day passed as a board:

### School Board in Special Session.

Moved by director Erickson, seconded by director Monson, that whereas there is a necessity of providing money for the payment of teachers' wages, and whereas the First National Bank has offered to pay the teachers' wages until funds are received, upon condition that the First National Bank be declared the depositary of the school funds,

Now therefore it is hereby ordered that the treasurer of the Rugby School District from this date will·deposit all the funds belonging to the Rugby School District Number 5 in the First National Bank.

(Signed)  Ed. Erickson, President.
(Signed)  P. A. Monson.
(Signed)  Fred H. McBride.

This order was prepared at the usual meeting place of the board with a majority of the board present in session, and transcribed upon a typewriter by the person who had for some time acted as the board's clerk pro tem and stenographer, and was there signed by the first two members, the third signing at his place of business soon afterwards, and before it was delivered by the members of the board in person to the treasurer. But this order was not fully complied with, as the treasurer deposited with the First National Bank only the sinking fund and other funds subsequently coming into his hands, leaving with the Merchants Bank the other funds deposited there, but transferring the sinking fund from that bank to the First National. This resolution as a proceeding of the board was not spread upon its minutes at that

time. The First National Bank failed January 4, 1909, and immediately the deposits of school moneys in that bank were discussed by Nelson and the board, whereupon it was discovered that the board had not placed upon its minutes the order or proceedings had on September 30th, and a meeting of the board was held immediately, January 4, 1909, and the order spread upon the minutes, together with the following: "It was moved by P. Monson, which motion was duly seconded by F. H. McBride, that the above resolution be adopted and accepted and recorded in the minutes of this meeting. Meeting then adjourned." All this was done as of date of September 30th, that the minutes might accurately record the proceedings had on that date. The treasurer had acted with reference to the sinking fund under the letter and resolution of June, 1908, and had deposited said fund, amounting to approximately $4,400, in the First National Bank, but not on time deposit as ordered. At a previous meeting of the school board under date of June 10, 1908, the record discloses the following to have occurred: "It was moved that the resolution declaring depositaries, which was passed on September 13, 1905, be rescinded, which motion was seconded and carried." But the treasurer denies all knowledge of this proceeding, and it appears that the only purpose of it was to enable the board to require the treasurer to deposit all of the school funds in the First National Bank, one of the two depositaries. This is shown by subsequent proceedings with reference to the sinking fund and the following resolution of the board immediately following the one in question: "It was moved that the treasurer be requested to furnish the board a statement of the amount that can be deposited on time, pursuant to chapter 103 of the School Laws of 1907, which motion was seconded and carried." Two days' adjournment was then had to June 12th, at which meeting the resolution was passed directing the deposit of all sinking funds with the First National. It is also plain that it was not the intent of the board by this so-called rescission to rescind the designation of the First National as a depositary, as that bank continued to be regarded by the board as its principal depositary and under the designation and bond of 1905, and which bond the board subsequently informed the treasurer was sufficient as a depositary bond to cover the sinking fund and deposits which he was directed to place in the First National.

Plaintiff contends that the school treasurer is the absolute insurer of the return to the district of all moneys reaching his hands, notwithstanding the law governing depositaries. Plaintiff further contends that, as no designation of depositaries was made by the board in 1907, there were no legal depositaries, and that the treasurer was charged with notice thereof and deposited funds in them, even at the order of the board, at his own risk, which position assumes that he was bound to know that there was no valid designation of depositaries, and no sufficient or valid bonds to cover the deposit made.

By chap. 105 of the Session Laws of 1905 a complete and comprehensive depositary plan was enacted. Whether prior to that date the liability of city and school district treasurers was absolute as insurers of moneys received or less limited under the several rules prevailing in the absence of depositary statutes is foreign to this inquiry. It is certain that under this enactment the officer is no longer an insurer against loss where he has complied with the statute requiring the deposit of public funds in the depositary bank. Comp. Laws 1913, § 1486. Instead of the old relationship of liability of the official to the municipality, the legislature has seen fit to declare it to be the better policy to substitute a relation of debtor and creditor as between the bank and the municipality. By § 1481, Comp. Laws 1913, "all funds of the city or school district shall be deposited in the name of the city or school district, by the city treasurer or treasurer of the school district, as soon as received by him, in such bank or banks as shall have been designated as city or school district depositaries." Such deposit must be made in the name of the school district, and in harmony therewith § 1484 provides that "all checks drawn upon the city or school district depositaries shall be signed by the city or school district treasurer in the name of the city or school district, by himself as treasurer." And a penalty for violation of these statutes shall be imposed under § 1482 if he "shall deposit any of the funds of his city or school district, or loan the same in any manner except according to the provisions of this article." And § 1488 makes a violation "of the provisions of this article" also a misdemeanor. If this money has been deposited in a depositary, the school district has, in the language of the opinion in 51 Neb. 116, in legal effect, made "a loan of such moneys to the bank; and the relation of debtor and creditor is thereby created, not between

the bank and the treasurer, but between the former and the state (school district), since the money thus deposited belonged to the state (school district), and not to the treasurer, its agent and representative. A depositary bank being the state's (district's) debtor for all funds deposited therein in compliance with law, all sums so remaining on deposit at the close of . . . (the treasurer's term) were not moneys in his hands in such a sense as he was bound at his peril to produce them in making settlement with his successor." ˙ The words in parenthesis are ours to better apply the language of the holding of Re State Treasurer's Settlement (Bartley v. Meserve) 51 Neb. 116, 36 L.R.A. 746, 70 N. W. 532, quoted in Hall County v. Thomssen, 63 Neb. 787, 89 N. W. 393. And prior to the passage of a depositary statute in Nebraska, that state held the official to be the insurer of public moneys received by him. Bush v. Johnson County, 48 Neb. 1, 32 L.R.A. 223, 58 Am. St. Rep. 673, 66 N. W. 1023, on a treasurer's bond for the period from 1889–1891. But as the foregoing illustrates, such liability was entirely changed by the enactment in 1891 of a statute similar to this. And of course the legislature has plenary power to prescribe the liability of its officials for the funds of it or its municipalities. The state could not elect to loan its money or that of its municipality to a bank, as here done, under the depositary law, and compel the treasurer as its representative under criminal penalties to create such relationship, he having no voice in the selection of the depositary, and at the same time hold him as an insurer of the state's debtor, the bank. Such would constitute confiscation of the private property of the individual who happened to be a public officer charged to receive public moneys. The state has therefore chosen to depart from any absolute or limited theory of the officer as insurer, and has substituted therefor the liability of its depositary, assuming rather to take the risk of the latter than of the official as to ability to respond for public funds. This disposes of many of the cases cited upon the official's common-law liability for loss of public funds. There are at least four different and distinct basic theories for such liability in the absence of a depositary statute. Mechem, Pub. Off. §§ 297–303. For conflict in the various jurisdictions on such questions, see 22 L.R.A. 449; 31 L.R.A. 844; 32 L.R.A. 223; and 33 L.R.A. 461, and cases so annotated.

Hence, the necessity of settling the law by statute as has been done by the act cited. If this bank was a depositary, this official is exonerated from liability in the absence of some cause shown to the contrary.

That this bank had been regularly designated as depositary in 1905 conclusively appears. It is admitted that in 1907 no new designation of depositaries was made. No steps were taken to that end by the board or its clerk. It was the duty of the clerk to advertise for bids for designation as depositary for at least two weeks prior to the first regular meeting of the board in July of each odd-numbered year, *i. e.,* in 1907; and it was the duty of the board at said meeting to designate the depositaries for the two years from July, 1907, to July, 1909, and during which period this bank failed; but the same was not done. This was its duty, however, only as to depositaries in which current or ordinary deposits are required to be made. It does not apply to time deposits under the express provisions of §§ 1478, 1479, because depositaries for time deposits can be designated after advertisement at any time, and need not be the depositary in which money on call is deposited. It is unnecessary to determine whether the statute, § 1479, is permissive only or mandatory as to advertising for time depositaries. It is sufficient that the school board did, by its resolution of June 12th, direct the treasurer "to deposit all of the sinking fund now in his hands, less the amount required to pay interest on bonds July 1st, next, in the First National Bank of Rugby, North Dakota, on time deposit for six months." So far as time deposits are concerned, the order of date September 30, 1908, "that the treasurer of the Rugby School District from this date will deposit all the funds belonging to the Rugby School District No. 5 in the First National Bank," may be disregarded and assumed to be irregular. The treasurer had the right to assume that it was a step toward enforcement of compliance with the resolution of June 12th, directing the deposit of the sinking fund in the First National Bank, as it was in fact. This resolution is a sufficient designation of that bank to answer the requirements of the statute. It is no objection thereto that no advertisement for bids had been had, as the treasurer had the right to assume, certainly in the absence of knowledge to the contrary, the regularity of the designation. The board, and not the treasurer, had the disposition of the school funds. It was the latter's duty to comply with the directions

of the board under pain of statutory penalties of imprisonment or forfeiture, or both. The responsibility rested not with the treasurer, but with the board, when the former followed the written orders of the latter. The official certainly cannot be under criminal liability for his refusal or neglect to comply with the requirements of the board, and at the same time be liable for loss of funds where he has complied with its unequivocal order to deposit. He must deposit the school funds "as soon as received by him, in such bank or banks as shall have been designated . . . as school district depositaries." It is not the treasurer's duty to select depositaries, but instead to comply with the orders of the board to deposit where that body having the power to designate depositaries has directed the deposit to be made. Comp. Laws 1913, § 1481. Neither the power nor the resulting responsibility to designate can be divided between the treasurer and the board, and it is not so divided by statute.

But it appears that the treasurer, though not bound to do so under circumstances disclosed in the evidence, did nevertheless attempt to insist upon an additional bond being given by said bank before or after the sinking fund was deposited and with reference thereto.

He testifies:

Some time in the latter part of June I think I spoke in regard to the additional bond for the sinking fund.

The clerk said: "They had a bond up, the First National Bank. . . . I just spoke to them different times in regard to the bond. . . . (The board) said they had a bond up from the First National as a depositary.

Q. You went to Lander, the clerk, and suggested the propriety of an additional bond in June, 1908?

A. I did.

Q. And that was in the event that the deposit should exceed the amount of the depositary bond?

A. Yes, sir.

The duty to require additional bonds was upon the board. Section 1475, Comp. Laws 1913, in part reads: "If at any time the amount of funds on deposit in any of such depositaries shall exceed one half of

the amount named in such bond it shall be the duty of the . . .
*school board* at its next regular meeting thereafter to require from
such depositary an additional bond in a sum not less than twice the
amount of such excess.  Such bond shall be approved by the . . .
school board and the approval thereof indorsed thereon by the . . .
president of the school board and by him deposited with the . . .
school district clerk." Therefore in making inquiry the treasurer went
to the proper source for knowledge, the custodian of such bonds. Be-
sides this he consulted the board. He did all that he was required to do
before compliance with the orders of the board respecting deposits. The
responsibility for the loss is not with the defendant treasurer, as he
had no option in the matter but to comply with the orders of the board.
That the proceedings of that body were irregular because no advertise-
ment for bids for deposits or because additional bonds have not been
required is immaterial. The defendant had the right to presume that
the school board had performed its duties.

That the relation of debtor and creditor arose from the deposit with
the bank, no matter how irregular the designation or without a desig-
nation, so long as the deposit was made upon the order of the board,
there can be no doubt.  The bank by accepting the money would be
estopped to deny its liability to return it to the district in any event,
and there can exist no valid ground upon which to charge the treas-
urer with any responsibility for this loss. Recent cases under deposi-
tory statutes are elucidating on this subject. Stephens v. Ludlow, 159
Ky. 729, 169 S. W. 473; Bath v. McBride, 163 App. Div. 714, 148
N. Y. Supp. 836.

But the treasurer is exonerated from liability upon another ground
sufficient in itself.  The designation in 1905 of depositaries, one of
which was this bank, continued under the terms of § 1475, Comp.
Laws 1913, without a new designation in 1907, so long as the board and
the bank continued such relationship.  It was a least a *de facto* de-
positary, and as such so far as all persons interested in this suit are
concerned, at all times a legal depositary of the public funds of said
school district, and as such it was the duty of the treasurer to deposit
said funds therein at the order of the board. Such is the intent of the
statute, § 1475 providing that such relationship "shall continue as
such until such time as the . . . school board shall advertise for

bids as aforesaid," *i. e.*, shall designate another depositary after advertisement therefor. Appellant contends that this provision is limited to those depositaries first designated without advertisement and prior to July, 1905; but inasmuch as there was no more reason for the continuation of such temporary depositaries than there is for those designated after advertisement, and the statute is ambiguous, public policy alone requires that the statute be interpreted to cover both classes of depositaries, temporary and for a term. A vacancy between the terms of permanent depositaries is equally as obnoxious and dangerous to public funds as between the first temporary and the first permanent ones. But this bank holds under the first or temporary designation evidently, or else the statute must be construed as directory as to dates. Chap. 105, Laws of 1905, has no emergency clause, and went into effect July 1, 1905. By the time the statute became such, the time for advertisement for "at least two weeks immediately prior to such meeting," *i. e.*, the "first regular meeting in July," had passed, and it was an impossibility to comply with the statute as to designation upon advertisement in July, 1905. Hence the designation without advertisement authorized in 1905 carried over until 1907 under the terms of § 1473. That being so, § 1475 must apply and continue such depositary "until such time as the school board shall advertise for bids as aforesaid." The statute is open to no other construction under appellant's own contentions that it be taken as mandatory, which contention it is unnecessary to pass upon. The right of this bank to act as depositary of the funds of this district did not cease or lapse at the expiration of the first regular meeting in July, 1907, of the school board on its failure to redesignate upon advertisement therefor said bank as such depositary. All that portion of appellant's brief based upon such assumption is an argument upon a false premise. This likewise disposes of all objections interposed and assignments thereon of error to the admission of the testimony of the 1905 designation, including the bond at that time executed and delivered by this depositary to the district.

General depositary provisions are also found in § 168 of chapter 263 of the Session Laws of 1911, or subdivision 2 of § 1297 of the Compiled Laws of 1913, having been carried forward from § 983 of the Code of 1905, in turn a codification of chapter 190, Session Laws 1901, greatly amending and enlarging § 820, Revised Codes 1899, orig-

inally enacted as § 204, Session Laws 1890. In reading these statutes it is noticeable that the first idea of departure from common-law liability of the treasurer for loss of funds arose from necessity of permitting the investment of sinking funds. In 1901 these statutes were further amplified. To this there was attached the original enactment concerning depositaries of sinking funds, coupled with which was the first exoneration of liability of the treasurer when such a deposit was complied with. This has been carried forward as the present § 1297, Comp. Laws 1913. From this source evidently arose the general depositary statutes found in §§ 1472–1488, inclusive, Comp. Laws 1913. But these must be read in the light of the general powers conferred by §§ 1173 and 1213, Comp. Laws 1913, but which are early enactments, which consequently must give way where necessary as modified by the specific statutes under investigation concerning depositaries and exoneration of liability. All are harmonious, however, when §§ 1173 and 1213 are thus read and taken as conferring but general authority. Appellant has emphasized § 1213, and contends that thereunder the defendant treasurer has the control as against the district school board of the district's funds. It is unnecessary to determine the extent to which the treasurer has exclusive control, further than already stated. It must be remembered in construing these statutes that § 1213 has been the law of this state almost since statehood, it being found as § 93 of the Session Laws of 1890, at which time there did not exist these statutes under investigation. It may be conceded that prior to such depositary statutes the treasurer was the insurer of the district funds, yet under the explicit terms of the statute as well as under the reason for its enactment, an entirely different theory and basis of official liability is now the law. Under § 1213 the treasurer has the control of the funds for the purposes of deposit and until deposited, and even thereafter to the limited extent of checking them out in the name of the district by himself as treasurer upon warrant of the school board as his authority to disburse. The custody of funds granted the treasurer by § 1213 is limited and subject to the other provisions involved, instead of it limiting the later enacted statutes, as appellant would construe it to operate.

The complaint being for recovery of a balance of funds of the district coming into the hands of its treasurer, he and his bondsmen have

33 N. D.—31.

established a prima facie defense when it was shown that the shortage exists because of the failure of the depositary wherein the school funds had been placed by the treasurer under order of the board. The burden of procedure then shifted to plaintiff and appellant to avoid the effect of such defense by proof that there was no depositary or that such a deposit was not made, or otherwise destroy such prima facie defense. In this the plaintiff board has wholly failed, but instead has established that the loss was through the fault of the depositary designated by the board, in which, under its order, the money was deposited and in obedience of law, a complete exoneration of the defendant. There is no question of negligence involved, nor could there be under the pleadings. The suit is not one for loss arising from a negligent deposit, if such a claim could be valid against a treasurer. Besides the facts exonerate him from negligence. Any fault on that score is elsewhere. The judgment of the District Court is affirmed, with costs.