SLOPE COUNTY, a Political Subdivision of the State of North Dakota, and O. F. Metcalf, Auditor of Slope County, North Dakota, Appellants, v. J. S. DOUGLAS and the State Bonding Fund of the State of North Dakota, Appellants.

(194 N. W. 385.)

**Depositaries — all funds in custody of treasurers of municipal corporations must be deposited in qualified public depositaries.**

1. Chapter 56 of the Session Laws of 1921, providing for legal depositaries of public funds, is construed and *held* to require the deposit of all funds in the custody of the various treasurers of municipal corporations in public depositaries qualifying under the act.

**Counties — treasurer and bondsmen liable for funds left on deposit in banks not qualifying as public depositaries.**

2. Where, at the time of the taking effect of the depositary law (chapter 56, Laws of 1921), public funds where on demand deposit in banks which did

not meet the requirements of the law, and where the deposit was allowed to remain in the noncomplying banks until they failed three months afterward, the treasurer and his bondsmen are liable for the loss sustained.

**Counties — evidence held to show no settlement between county treasurer and commissioners or successor whereby unauthorized deposits of county funds were accepted as cash.**

3. The evidence is examined and *held* to show that there was no settlement had between the county treasurer and the county commissioners or between the county treasurer and his successor in office on the basis of the unauthorized deposits being accepted as cash.

Opinion filed May 22, 1923.   Rehearing denied July 7, 1923.

Counties, 15 C. J. § 138 p. 516 n. 38; § 197 p. 521 n. 19; § 211 p. 529 n. 92 New; Depositaries, 18 C. J. § 67 p. 591 n. 69.

Appeal from the District Court of Slope County, *Pugh,* J.

Judgment modified and affirmed.

*William Langer,* and *C. P. Brownlee,* State's Attorney, for plaintiffs-appellants.

*George F. Shafer,* Attorney General, and *Charles Simon,* Assistant Attorney General, attorneys for State Bonding Fund of the State of North Dakota.

*T. B. Torkelson,* for defendant-appellant Douglas.

BIRDZELL, J.   This is an action to recover certain moneys belonging to Slope county, which were deposited by the defendant Douglas, as county treasurer, in the First State Bank and the Slope County Bank of Amidon.   The action is against both the county treasurer and the State Bonding Fund, as surety on his official bond.   By stipulation the case was tried before the judge of the district court without a jury. A judgment was rendered in favor of the plaintiff for $24,576.51 plus interest and costs.   From this judgment the plaintiff appeals, assigning error in the failure of the trial court to grant a judgment for the full amount of the bond, $50,000.   The defendants also appeal, specifying as error the findings of the trial court to the effect that there was no settlement made with the board of county commissioners at the time of the retirement of the defendant Douglas as county treasurer, in finding that the defendant Douglas was unable to deliver to his successor, on May 1st at the expiration of his term, any of the money on deposit in

either the First State Bank or the Slope County Bank; and in holding the defendants to be liable for monies deposited in the banks mentioned subsequent to March 8th, 1921.

The undisputed facts are: Douglas was elected county treasurer of Slope county in November 1918, assuming charge of the office May 7, 1919, retiring two years later. He was bonded by the defendant State Bonding Fund in the sum of $50,000, the bond being in the usual form, conditioned for the faithful discharge of the duties of the office and the rendering of "a true account of all moneys and property of every kind that shall come into his hands as such officer and pay over and deliver the same according to law." In January, 1919, the board of county commissioners designated the First State Bank and the Slope County Bank as county depositaries. They qualified by furnishing bonds as required. From time to time moneys were deposited in these banks and in the Bank of North Dakota after its organization in the summer of 1919. Section 7 of the Bank of North Dakota Act required, with certain qualifications immaterial here, the deposit of public funds in such bank. On December 2, 1920, an initiated law (North Dakota Laws 1921, p. 255) went into effect, amending the Bank of North Dakota Act (chapter 147, Laws of 1919) by excluding from the enumeration of the funds required to be deposited in such bank, county funds, among others likewise excluded. On March 8, 1921, an emergency act of the legislature was approved prescribing regulations under which public funds should be deposited (chapter 56, Laws of 1921). The banks hereinbefore mentioned did not comply with the requirements of this emergency measure by furnishing bond or in any other manner. Between the date of the taking effect of this law and the expiration of Douglas' term of office in May, he deposited in the two banks named, $24,576.51. In addition to this, there were funds which had been deposited by him in these banks previous to March 8th, amounting to over $70,000. When Douglas' term of office expired difficulty was experienced in turning over the office to his successor, one Johnson, who refused to receive the evidence of indebtedness of these banks as cash. Both banks were closed on or about June 10th following.

The contentions on this appeal involve: (1) The liability of the defendants for moneys placed in the two banks in question on original deposit subsequent to the taking effect of the emergency law (March

8, 1921). (2) The liability of the defendants for funds which the treasurer kept on deposit in the same banks after the taking effect of this law which prescribed the qualifications for depositaries. (3) Whether or not the liability, if any, is qualified by the circumstances in connection with the transfer of the office from Douglas to Johnson on or about May 1st.

Considering these questions in the order they are stated: Chapter 56 of the Laws of 1921, in prescribing the qualifications for depositaries of public funds, lays down certain definite requirements, principal of which is the furnishing of a bond. It expressly makes all state and national banks complying with the provisions of the act legal depositaries, but it forbids the deposit of money therein until a bond is furnished in an amount at least equal to the largest deposit that may at any time be in the depositary. Upon the record before us, it is clear that the banks in question had not complied with the law, and that during the period of their noncompliance, the treasurer deposited $24,576.51. As to the amount so deposited, we deem it to be clear that the treasurer is liable personally.

The question as to the liability of the defendants for funds which the treasurer had previously deposited in these banks and which were not withdrawn and placed in a depositary qualified under the act which became effective on March 8th involves somewhat different considerations. The question is presented of the duty of the officer in circumstances created by the passage of the new law. In considering this question, it must be borne in mind that constructive notice of the passage of the emergency law was conveyed to the officer and to his bondsmen, and the question must be decided uninfluenced by the hardship, if any, that may result through the failure of the officer to have known in fact of the passage of the act.

The first section of chapter 56, Session Laws of 1921, reads as follows:

"All state and national banks in the state of North Dakota complying with the provisions of this act, and the Bank of North Dakota are hereby declared to be legal depositaries of the public funds of the various towns, townships, school districts, cities and villages and the various treasurers of the said corporations shall deposit all funds in their custody in such banks."

Section 2 provides that before any deposit shall be made in any depository, such depository shall furnish a bond, payable to the public corporation making the deposit, in an amount that shall at least equal the largest deposit that may at any time be in such depository; that the bond shall be subject to the approval of the governing body of the corporation or, upon its failure or refusal to approve, shall be presented to the judge of the district court. Upon approval of the bond, it is provided that the bank "shall be declared a depository of the funds of such corporation." Further provision is made to the effect that upon deposit, as provided in the act, the custodian and the sureties on his bonds shall be exempt from liability by reason of loss through failure or other act of the depository. It also contains a section rendering the custodian guilty of a misdemeanor if he should deposit public funds in any *state or national bank* in excess of the bond furnished. We are of the opinion that this act had the effect of making the Bank of North Dakota a general legal depositary from the date it took effect, and that until such time as other banks qualified by furnishing the bond required it was the only legal depositary of demand funds. This is clearly deducible, from the first section of the act, which declares that all state and national banks complying with the provisions of the act and the Bank of North Dakota are legal depositaries, and from the other provisions making it incumbent upon state and national banks to furnish bonds before deposits may be made therein. While § 2 is general in its requirement that the *depository* shall furnish bond, it is clear, in our opinion, from the language of Section 1 and from the penal provision of the act, that the Bank of North Dakota is not required to furnish bonds in order to qualify as a depositary. Section 1 further makes it the duty of the various treasurers to deposit *all funds in their custody* in depositary banks. This is a clear legislative direction to the treasurer to see that all funds are immediately given the protection which this act is designed to afford by being placed in depositaries furnishing bonds or in the Bank of North Dakota.

The condition of the legislation dealing with the subject consequent upon the passage of the initiated law was such that some doubt might well have existed as to whether there remained *any* legal requirements for depositaries of funds, other than those governing the Bank of North Dakota which continued to be the depositary of the state and of its

penal and industrial institutions. See State ex rel. Kopriva v. Larson, 48 N. D. 1144, 189 N. W. 626. This initiated law, it will be remembered, had removed the requirement of the deposit of county and local public funds in the Bank of North Dakota, but it did not provide affirmatively any requirement of deposit elsewhere, nor did it prescribe any qualifications for depositaries. Hence, the deduction that the emergency act was designed to supersede all other laws governing public depositaries, in so far as it dealt with the subject, is altogether reasonable and logical whether viewed from its intrinsic provisions or from the standpoint of its relation to other legislation. Whatever, therefore, might have been the status of such funds or the measure of the liability of treasurers depositing them in banks after the initiated law took effect, we deem it to be clear that the legislature, in chapter 56, Laws of 1921, directed their deposit in legal depositories under that act. This requirement is just as stringent, in our opinion, as applied to funds already in their custody, as it is with respect to funds which would subsequently come into their hands for deposit. From this it follows that the liability of the treasurer and his bondsmen is not limited to the funds placed on original deposit subsequent to the taking effect of the act, but it embraces as well funds in his custody which were not deposited in accordance with the act subsequent to its taking effect.

There is nothing in this record to show that the demand funds in the two banks in question when the initiated law took effect, amounting to some $70,000, could not have been promptly withdrawn and placed in a legal depositary had there been an attempt so to do. The banks were then open and continued to do business for more than three months thereafter. We cannot presume that the banks were insolvent on March 8th when the new depositary law took effect. See Schafer v. Olson, 24 N. D. 542, 43 L.R.A.(N.S.) 762, 139 N. W. 983, Ann. Cas. 1915C, 653.

The contention of the defendants to the effect that a complete settlement was had at the time of the transfer of the office from Douglas to Johnson in May finds little support in the record. The defendant Douglas admitted that at the time the office was transferred he took a receipt from his successor acknowledging "the receipt of $20,955.78 in assets by him considered good, and $55,058.35 in assets

not by him considered good until finally paid or liquidated," and which further recited that they were accepted by him subject to final payment or liquidation. He also testified on cross-examination that Mr. Johnson was not satisfied with the deposit in the two banks in question and that when he had said on his direct examination that there had been a full accounting all he meant was that he had told the county commissioners and the new treasurer that he had the balances in the two banks which subsequently failed.

Leaving wholly aside all question of the authority of the county commissioners to accept in settlement of the county treasurer's account something other than cash or a credit in a legal depository, we think the evidence clearly establishes that the bank balances in question were not received as cash by the incoming treasurer and that there was no settlement with the county commissioners such as would release the retiring treasurer or his bondsmen from a liability to account for funds which had not been deposited as the law required.

The judgment in favor of the plaintiff is modified as to amount, and it is ordered that the plaintiff have judgment against the defendants for $50,000 plus interest and costs.

Bronson, Ch. J., and Christianson, and Nuessle, JJ., and Coffey, Dist. J., concur.

Mr. Justice Johnson, being disqualified, did not participate, Honorable J. A. Coffey, Judge of the Fourth Judicial District, sitting in his stead.

## On petition for rehearing.

Per Curiam. The defendant, State Bonding Fund, has petitioned for a rehearing. Among other things it is asserted that the defendant state bonding fund, if afforded an opportunity to do so, can produce certain additional evidence which will demonstrate its nonliability so far as concerns moneys on deposit on and prior to March 8th, 1921. This court cannot, of course, entertain a motion for leave to introduce additional evidence. Such application should be presented to and determined by the trial court. And although this court expresses no opinion upon the merits of the proposed application, a majority of

the court are of the opinion that the defendant State Bonding Fund should be permitted to present such application to the trial court. The judgment pronounced in the former opinion, therefore, will stand, but without prejudice to the right of the State Bonding Fund to make its said application to the district court.

BRONSON, Ch. J., and CHRISTIANSON, and NUESSLE, JJ., and COFFEY, Dist. J., concur.