McHENRY COUNTY, NORTH DAKOTA, a Municipal Corporation, Respondent, v. THE NORTHERN TRUST COMPANY OF FARGO, a Corporation, Appellant.

(200 N. W. 888.)

**Depositaries — rights of parties as to depositary bond governed by terms of contract; statutory provisions referred to in depositary bond as much a part thereof as if fully set out.**

1. In a suit on a surety bond, given by defendant in behalf of a depositary of public funds, pursuant to §§ 3315–3329, Comp. Laws 1913, the rights of the parties are measured by the terms of the contract; the statutory provisions referred to in the bond are as much a part of the contract as if the same had been fully set out therein.

**Depositaries — law relating to designation of depositaries of county funds was superseded by law making Bank of North Dakota sole depositary.**

2. After chapter 147, Session Laws 1919, was enacted making the Bank of North Dakota the sole depositary of all public funds, and while the same was in effect, public officers having custody of county funds were precluded from making deposits subject to draft on demand in banks other than the Bank of North Dakota, and §§ 3315–3329, supra, relating to the designation of depositaries of county funds, were to that extent superseded.

**Banks and banking — bank holds instrument intrusted for collection in capacity of agent only.**

3. When an instrument is entrusted to a bank for collection, the bank secures no title thereto and no right to hold it in any other capacity than as agent.

**Depositaries — deposit by county treasurer in bank for collection held not deposit under depositary law making surety on bond liable; "deposits subject to draft on demand."**

4. A transaction or arrangement by the county treasurer with a national bank which had been duly designated a depositary of county funds, pursuant to §§ 3315–3329, Comp. Laws 1913, made after chapter 147, Session Laws 1919 went into effect, whereby the treasurer delivered duly endorsed checks and other items to the bank for collection purposes and simultaneously received a cashier's check in an amount equal to the aggregate of the items delivered, which cashier's check he forwarded to the Bank of North Dakota, the only lawful depositary of county funds under chapter 147, supra, for the purpose of depositing county funds therein, was not intended by the parties to constitute a deposit of county funds "subject to draft on demand," and the surety

Note—(3) Bank as agent of payee for collection, see 3 R. C. L. 633; 1 R. C. L. Supp. 868; 4 R. C. L. Supp. 210; 5 R. C. L. Supp. 190.

on the bond executed when the bank was designated a county depositary under §§ 3315–3329, supra, is not liable under such bond for the failure of the bank to honor the cashier's checks.

Opinion filed October 24, 1924.

Banks and Banking, 7 C. J. § 245 p. 597 n. 32, p. 598 n. 33. Depositaries, 18 C. J. § 45 p. 580 n. 33, p. 581 n. 43 New; § 59 p. 586 n. 79, 80; § 60 p. 588 n. 1.

Appeal from the District Court of McHenry County, N. Dak., before *Buttz, J.*

Reversed.

*Bangs, Hamilton & Bangs* and *Pierce, Tenneson, Cupler & Stambaugh,* for appellant.

"Deposits are made in a bank in accordance with the universal usage, which becomes a part of the law of the transaction. They are neither loans nor bailments in the strict sense of the word. A deposit is a transaction peculiar to the banking business and one that the courts should recognize and deal with according to commercial usage and understanding." Elliot v. Capital City State Bank, 1 L.R.A. (N.S.) 1131, at page 1134.

"A deposit in a bank is either general or special. Where a general deposit is made, it is either credited to the account of a depositor, subject to his check, or evidenced by demand or time certificate." Carlson v. Kies, 75 Wash. 171, 47 L.R.A.(N.S.) 318, 134 Pac. 808.

"A deposit is where a sum of money is left with a banker for safe keeping, subject to order and payable, not in the specific money deposited, but in an equal sum." Allibone v. Ames, 33 L.R.A. 585, at page 588.

"A depositor is one who places his money on deposit for safe keeping to be paid out on demand upon his check or draft." In the appeal of Parkersbury Bank, 6 W. N. C. 394, cited in 1 Michie on Banking, 600.

"A cashier's check, so called, differs radically from an ordinary check. The latter is merely a bill of exchange drawn by an individual on a bank, payable on demand; or, in other words, it is an order upon a bank purporting to be drawn upon a deposit of fund, for the payment of a certain sum of money to a person named, or to order or bearer,

on demand. As between himself and the bank, the drawer of the check has the power of countermanding his order of payment at any time before the bank has paid it, or committed itself to pay it. 5 Am. & Eng. Enc. Law, 2d ed. p. 1079, and cases cited. When the check, however, is certified by the bank, the power of revocation by the drawer ceases, and the bank becomes the debtor. 1 Morse, Banks & Banking, 398, 399. A cashier's check is of an entirely different nature. It is a bill of exchange, drawn by the bank upon itself and is accepted by the act of issuance; and, of course, the right of countermand, as applied to ordinary checks, does not exist as to it. 2 Randolph, Com. Paper, 588; 1 Dan. Neg. Inst. 444; 1 Parsons, Notes & Bills, 288. The bank, in such case, is the debtor, and its obligation to pay the cashier's check is like that of the maker of any other negotiable instrument payable on demand. As applied to the case under consideration, the rights and obligations of the plaintiff and defendant as to the cashier's check in question were those of a payee and maker of a negotiable promissory note payable on demand." Drinkall v. State Bank, 11 N. D. 10; 57 L.R.A. 341, cited in 11 C. J. p. 23.

"A draft is an order for the payment of money, drawn by one person on another. Wildes v. Savage (U. S.) 29 Fed. Cas. 1226. It is said to be a nomen generalissimum, and to include all such orders. Wooster defines it: 'An order by which one person draws on another for a certain sum of money; a check; a bill of exchange.' Thus the word 'draft' as used in Laws 1891, chap. 43, 16, relates to forgery as a general term, and includes checks." State v. Warner, 60 Kan. 94, 55 Pac. 343.

*E. R. Sinkler & G. O. Brekke,* and *Albert Weber,* for respondent.

"A general deposit of money in a bank is not a bailment to said bank, but a giving of credit merely." Schuman v. Citizens State Bank, 27 N. D. 599.

"A general deposit in a bank does not constitute a bailment or trust fund, but merely a debt which is due and owing by the bank to the depositors." Citizens State Bank v. Iverson, 30 N. D. 497.

"The result of a deposit in a bank is to create the relation of creditor and debtor between the depositor and the bank and the issuance of checks thereon is an assignment to the extent of the checks, and an

exchange of the checks for drafts does not change the relationship." Lamro Bank v. Farmers Bank, 148 N. W. 851.

"A deposit is where a sum of money is left with a banker for safe-keeping subject to order and payable not in the specific money deposited, but in an equal sum. It may or may not bear interest according to the agreement. While the relation between the depositor and the banker is that of debtor and creditor, simply, the transaction cannot in any proper sense be regarded as a loan, unless the money is left not for safekeeping for a fixed period at interest in which case, the transaction assumes the characteristics of a loan." State v. McFetridge (Wis.) 54 N. W. 1; State v. Hill (Neb.) 66 N. W. 554.

"A check is a draft or order upon a bank or banking house purporting to be drawn upon a deposit of funds, for the payment of, at all events, a certain sum of money to a person named therein or to him or his order or to bearer, and payable instantly on demand." 5 Enc. Law, 1029.

"The distinguishing characteristics of checks as contra distinguished from bills of exchange as generally accepted are that checks purport to be drawn on a deposit, in the custody of a bank or persons carrying on a banking business."

"A check is a written order or request for the payment of money addressed to a bank or banker." Thompson v. State, 40 Ala. 16.

"Even though the county treasurer had no right to make the deposit in the Towner Bank, yet if he did so, and the bank accepted the money and deposit, and the county treasurer made the deposit in reliance upon the bond which was in full force and effect, the surety company cannot take advantage of any claimed illegal action on the part of the treasurer in making such deposits." United States Fidelity & G. Co. v. State, 28 L.R.A.(N.S.) 865.

"The sureties on the bond of a bank selected as a state depositary are liable for the amount deposited in the bank by the state treasurer, which did not exceed the amount of the bond although he deposited a larger amount in the bank than was prescribed by the Board of Deposits." State v. Pederson (Wis.) 114 N. W. 828.

"Public interests would be jeopardized if the sureties upon a county depositary bond could exonerate themselves from liability by showing

that he was not such de jure." Hennipen County v. State Bank, (Minn.) 66 N. W. 144.

JOHNSON, J. This is an action against a surety upon a depositary bond. The case was tried to the court and from the judgment in plaintiff's favor and from an order denying a new trial this appeal is taken.

On January 7, 1919, McHenry county accepted a depositary bond in the sum of $30,000.00, furnished by defendant company in behalf of the First National Bank of Towner, North Dakota. The principal, hereinafter referred to as the Towner Bank, had been designated a depositary of county funds pursuant to the provisions of §§ 3315 to 3329, Comp. Laws, 1913. The condition of the bond is in the following language:

"Whereas the said First National Bank of Towner has made application or proposal or is about to make application or proposal to. the board of county commissioners of said county to become one of its depositaries under the provisions of §§ 3315–3329 of the 1913 Compiled Laws of North Dakota,

"Now, Therefore, if the said bank is designated one of the depositaries of said county under the provisions of said §§ 3315–3329 of the 1913 Compiled Laws of North Dakota and shall safely keep and repay according to the *letter* and *intent of said sections* any and all funds deposited with it, subject to draft on demand, together with interest thereon at the rate specified in said application or proposal, then this obligation to be null and void, but otherwise to be and remain in full force and effect."

The statutes referred to in the bond prescribe the method of designating the depositaries of county funds. In general, they required a designation of depositaries upon competitive bids. An adequate bond was required before any banking institution could be designated. All funds of the county were directed by these statutes to be deposited by the treasurer in banks designated as county depositaries; and if the treasurer deposited such funds otherwise he became liable to fine or imprisonment. On the other hand, if he complied with the law and deposited the public funds only in designated depositaries he was ex-

pressly exempt from liability by reason of loss of such funds thru the failure or insolvency of the banks designated.

On February 25, 1919, chapter 147, Session Laws, 1919 became effective. Section 7 of this act provided that "all state, county, township, municipal and school district funds . . . and all other public funds shall be, by the person having control of such funds, deposited in the Bank of North Dakota within three months from the passage and approval of this act, subject to disbursement for public purposes. . . . Any person who shall violate any of the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by imprisonment in the county jail for not less than 90 days and by fine not less than $100.00. All deposits in the Bank of North Dakota are hereby guaranteed by the state." In § 10 it is provided: "Whenever any of the public funds hereinbefore designated shall be deposited in the Bank of North Dakota as hereinbefore provided the official having control thereof and the sureties on the bond of every such official shall be exempt from all liability by reason of loss of any such deposited funds while so deposited."

On December 2, 1920, an initiated law (Sess. Laws, 1921, p. 255) went into effect amending section 7 by excluding county funds from the public funds therein enumerated and required to be deposited in the Bank of North Dakota. From the enactment of chapter 147, supra, in 1919, to December 2, 1920, save for certain exceptions not necessary to notice, the only legal depositary of county funds was the Bank of North Dakota. The portions from the act creating the Bank of North Dakota, quoted above, clearly disclose a legislative purpose to deprive all officers, having control of the fiscal affairs of public corporations, of the power to designate any depositary of public funds other than the Bank of North Dakota. It is a matter of public history, which this court will judicially notice (Comp. Laws, 1913, §§ 7928–7933) that the express purpose of this law was to bring into this institution all public funds. While it is true that the act did not deprive the county commissioners of the control over the fiscal affairs of the county, reposed in them by statute, as is said in State ex rel. Kopriva v. Larson, 48 N. D. 1144, 189 N. W. 626, yet it is clear that whatever power the county commissioners had with respect to the designation of depositaries for public funds (§§ 3315–3329) was entirely wiped out

when chapter 147, Session Laws, 1919 was enacted.  It would seem that any attempt, directly or indirectly, to evade the letter and the express purpose of the statute in this respect would have been wholly without effect.  It must, therefore, be conceded that when the arrangement, which will be more fully described, was made by the county treasurer with the cashier of the Towner bank, it would have been illegal for the officers of McHenry county to attempt to use any bank other than the Bank of North Dakota as a depositary of county funds. Had they done so they would, under § 7 of the act, supra, have become liable to criminal prosecution as misdemeanants.  This is important as throwing light upon the real intent and purpose of the parties when the new arrangement was made.  In this connection it should be noted, as further indicative of the legislative intent that all public funds be collected in the Bank of North Dakota, that one of the two penal provisions in the whole act relates to a disregard of the law in this particular.

At or about the time that the public funds of McHenry county were transferred to the Bank of North Dakota, the treasurer of the plaintiff entered into an arrangement with an officer of the Towner Bank substantially as follows:  The county treasurer would receive checks and items in payment of taxes and other obligations due the county; these he would, from time to time, take over to the bank and receive cashier's checks therefor in the same amount as the aggregate of the items, which cashier's checks would be by the treasurer forwarded to the Bank of North Dakota for the purpose of depositing therein the funds of the county.  By this arrangement the treasurer avoided the trouble and annoyance of transmitting a large number of small items and personal checks directly to the new depositary.  The transaction is described in the treasurer's testimony as follows: "Q. How did you deposit the checks and other items that came into the county treasurer's office?  A. I merely got a cashier's check and sent the one item. Q. When you cleared you took the checks, money orders and other items in your office to one of your local banks in Towner, either the First National Bank or the Pioneer and endorsed them over to these banks and exchanged them for a cashier's check, is that the fact, and took the cashier's check and sent that in to the Bank of North Dakota for deposit?  A. With a certain understanding, yes.  Q. That is the way

these transactions were handled, is it not? A. Yes." The treasurer testifies further describing the arrangement: "Myself or my deputy took these particular items to the First National Bank and placed them there practically the same as a deposit for the collection of these checks." Court: "Tell what you did, not what you think it was." A. "That is what I did, I left them there *and put them in there for collection,* in other words, and they turned around and gave me cashier's checks in place of them." The arrangement was made with the cashier of the Towner Bank and the treasurer testifies as to the cashier's statements as follows: "And what was that talk with respect to your leaving these items in the bank with Mr. Bergh? A. *That he would take them for collection to assist us with* the operation of the work in the office, that is my idea—I took it up with the county commissioners and they approved." The former county treasurer quotes Bergh as saying: "I will take these here items as collections and handle them and I will give you one item which you can send to the Bank of North Dakota instead of having numerous items to contend with." This witness testified that the county commissioners told him to "go on and use the First National Bank and the Pioneer State Bank each month alternately for a *clearing house* as a *collection agency* for these checks and turn over one cashier's check to the Bank of North Dakota." No formal resolution authorizing the arrangement was adopted by the county board (See State ex rel. Kopriva v. Larson, supra). It further appears from the testimony of this witness that it was expressly agreed between him and the cashier of the Towner bank that if any item was not paid the county would refund that amount to the bank. The bank made no charge under this arrangement, but it seems that it received interest on daily balances with its correspondent bank at the rate of $2\frac{1}{2}\%$ and that the same were somewhat increased for a few days until the cashier's check was presented and paid. It appears probable that the county lost no interest on this account, that is, it took no longer time, in the ordinary course of business, to clear the cashier's check than to clear the numerous small items had they been sent and deposited directly. It is likely, in some circumstances, that the cashier's check would be cleared with less delay than the individual items, with the result that the funds of the county would

begin to draw interest at the Bank of North Dakota somewhat earlier than otherwise might have been the case.

Between the second and fifteenth days of December, 1920, pursuant to the arrangement hereinbefore described, the county treasurer left with the Towner bank various items, checks, etc. and received from the bank cashier's checks therefor amounting to a total sum of $14,796.79. These cashier's checks were delivered to the treasurer of McHenry county simultaneously with delivery to the Towner Bank of the items and checks heretofore mentioned. The cashier's checks were thereupon by the county treasurer forwarded to the Bank of North Dakota to be cleared and the proceeds deposited therein as the funds of McHenry county. The cashier's checks were presented, but never paid and it is on this account that suit is brought against the surety on the theory that the transaction constituted a deposit within the terms of the bond.

From and after the 25th of May, 1919, three months after chap. 147, Sess. Laws 1919, went into effect, the record shows that the plaintiff drew no checks on the Towner Bank; on that date there was a balance in the checking account of McHenry county with the Towner Bank of about $240.00. This amount was left in the bank, according to the testimony of the former treasurer, to cover checks that had been drawn prior to that date. The treasurer testifies, without contradiction in the record, that McHenry county opened its checking account with the Bank of North Dakota at the time the law required that county funds be transferred to that institution, and maintained the same exclusively therein until the Towner bank closed.

On January 3, 1921, the county commissioners passed a resolution reciting, among other things, that the board authorized the county treasurer to use the Towner bank "as a clearing bank to handle such sundry checks and items that accumulate in the regular course of business." The state's attorney of McHenry county, J. H. Ulsrud, pursuant to direction from the county commissioners, made a demand upon the defendant Trust Company on January 13, 1921, for $12,682.-19. In the demand he stated the circumstances in which the funds of McHenry county came under the control of the Towner Bank to have been "that the county treasurer on different dates and in amounts as hereinbefore stated, in depositing funds with the Bank of North

Dakota, bought cashier's checks from the First National Bank of Towner, payable to the order of Rufus Tree, county treasurer, and that he thereafter endorsed such cashier's checks to the bank of North Dakota" and that the same were not paid. Each cashier's check issued was marked "Not subject to check" and there was not at any time, subsequent to the taking effect of the law requiring the transfer of public funds to the Bank of North Dakota, an account in the Towner Bank in behalf of McHenry county subject to check. On January 8, 1920, the deposits of McHenry county in the Towner Bank, according to the ledger sheet, amounted to $142.58. Of this amount a tender was made. From that date until the bank closed there was no change, according to the ledger record.

The former treasurer testified that he outlined the plan and purpose of the arrangement with the Towner Bank to the county commissioners; that he used the term "clearing," and "that it would be more convenient for the office to clear thru one of these banks and send one item to Bismarck;" he says that the county commissioners agreed that that was proper. In other words, it appears from the testimony and from the resolution of the county board that the arrangement was understood and intended by all parties to be for the convenience of the county officers of McHenry county in dealing with small items and in depositing the public funds of McHenry county in the Bank of North Dakota as required by § 7, supra.

After the taking effect of the chapter creating the Bank of North Dakota, on February 25, 1919, the surety, defendant herein, apparently took no steps to cancel the bond or in any manner indicate that, in its judgment, its liability thereunder had terminated. The premium was paid by the Towner bank and not by the county. There is no evidence that the surety had knowledge or was notified of the collection agency arrangement until the demand was made.

The trial court found that the plaintiff deposited with the First National Bank of Towner between the second and fifteenth days of December, 1920, $14,796.79, pursuant to the terms of the bond; that the bank received the amount and agreed to repay it upon demand; that such deposit was made in reliance on the bond and would not have been made but for the bond; and that the defendant permitted the

bond to remain in force without cancelling the same during all the times when such moneys were deposited in the Towner Bank.

Stated generally the plaintiff's contention is that the transaction between the officers of McHenry county and the Towner Bank, with respect to county funds, amounted to a deposit within the terms of the bond, and that inasmuch as the Towner Bank failed to repay the amount so deposited on demand the condition of the bond was broken and the surety liable to the full amount in which the Towner Bank defaulted in repaying such deposits to McHenry county. It is, on the other hand, contended by the surety that the transaction did not amount to a deposit within the terms of the bond; that it was merely a convenient arrangement entered into for the accommodation of the officers of McHenry county in assisting them to make deposits of public funds in the Bank of North Dakota. Stated somewhat differently, the position of the surety is that neither the Towner bank nor the officers of McHenry county intended, by the arrangement, to create or continue the relation of depositor and depositary, necessarily terminated by the new law.

It is well to note what is *not* as well as what *is* involved in this proceeding. No serious claim is made against liability on the ground that statutory formalities were not complied with by the officers of the county when the depositary was designated and the bond approved. This is not a case, therefore, where a bond has been acted on by public officers and funds deposited in reliance thereon, without strictly complying with some initial or statutory formalities. It has been held that such a bond, acted on by all the parties, is binding as a common law obligation and that the surety cannot avoid liability on the ground of mere technical omissions with respect to certain preliminary requirements. The principles of such holdings have no application to the facts in the case at bar. The defendant, admitting the initial validity of the bond, contends that the default of the principal is not within the condition thereof. A further discussion of those cases would be useless and merely pedantic.

The rights of the parties are measured by the terms of the contract between them; the statutory provisions, referred to in the bond, are as much a part of the contract as if the same had been fully set out therein. 18 C. J. 586; Equitable Surety Co. v. Board of Finance,

186 Ind. 650, 117 N. E. 860; Henry County v. Salmon, 201 Mo. 136, 162, 100 S. W. 20; Yeargain v. Delaware County, 90 Okla. 38, 215 Pac. 619. The surety, in the case at bar, undertakes and agrees that the principal will repay all funds deposited with it "subject to draft on demand," as a depositary duly designated and acting under the provisions of §§ 3315–3329, supra. Such are the broad limits of the obligation of the surety.

At the threshold of the case the question arises whether the officers of McHenry county could legally deposit the public funds of the county in the Towner bank after the law of 1919 became effective, establishing the Bank of North Dakota as the sole legal depositary of the public funds of the state and of its political subdivisions. Prior to the taking effect of chapter 147, Session Laws, 1919, it was the duty of the county commissioners to designate depositaries of county funds and of the treasurer to deposit such funds only in duly designated depositaries. Section 3324, Comp. Laws, 1913, provides that if the treasurer should "deposit" or "loan" county funds in any manner except in accordance with the provisions of §§ 3315–3329 inclusive, he would become liable to a penalty of $500.00 for each such loan or deposit. The effect of the enactment of chapter 147, supra, upon the old statute relating to depositaries of county funds need not be determined in this action. This court intimates, in State ex rel. Kopriva v. Larson, 48 N. D. 1144, 189 N. W. 626, that the provisions of §§ 3315–3329 were not wholly or for all purposes repealed. In any event, there can be no difference of legal opinion that after chapter 147, supra, became effective the county commissioners ceased to have power to designate any institution other than the Bank of North Dakota a depositary of the funds of McHenry county.

When chapter 147, supra, became operative, the surety on the bond of the Towner bank had a right to assume that the latter institution would no longer be used as a depositary in violation of express statutory provisions. There was thereafter no need for vigilance on the part of the surety with respect to the solvency of the method of doing business of the principal in the bond. The surety could rightfully rely on the presumption that the county officers would obey the civil and criminal statutes and make no further deposits in the formerly designated depositaries. Thereafter the county and the surety had at

least constructive knowledge of the new situation which precluded McHenry county from continuing to use the Towner bank as a depositary of public funds, or from directly or indirectly consenting thereto. Had deposits been made in that bank notwithstanding the provisions of the new law, the act would have been unlawful. Slope County v. Douglas, 49 N. D. 1026, 194 N. W. 385, 386. Surely, on the facts in this record, no rule of law or principle of justice supports the prop-osition that there can be imposed on a surety in an undertaking in behalf of a depositary, in which a deposit has been or may lawfully be made, a liability on account of a deposit made or attempted to be made therein after the time when the legislature has declared the making of such a deposit a criminal act.

It is not perceived that the initiated law, which went into effect on December 2, 1920, has any bearing upon any issue involved in this case. It removed the mandatory requirement that all public funds be deposited in the Bank of North Dakota, but left that institution a legal depositary. Slope County v. Douglas, supra. McHenry county continued to deposit its funds in the Bank of North Dakota after the enactment of the initiated law. The arrangement made at the time the county transferred its public funds from the Towner bank as depositary to the Bank of North Dakota as the only legal depositary of public funds in the State, was continued unchanged. The intention of the officers of the county and of the managing agents of the Towner bank, remained precisely the same with respect to the deposit of county funds. Whether the arrangement for the clearing of checks was, when made, within or without the condition of the bond, the situation in that regard was not altered by the taking effect of the initiated law. An agreement which was not and could not be within the terms of the contract when made in May, 1919, cannot on December 2, 1920, by some mysterious and spontaneous metamorphosis, become converted into a situation within the condition of the bond. By contending for a species of suspended animation of the bond while § 7, supra, was in force, the plaintiff does not strengthen his position. It may be conceded, for the purpose of this discussion only, that the bond had not become inoperative and that by an appropriate resolution the commissioners of McHenry county could, on December 2, 1920, have re-designated the Towner bank a depositary of all public funds under

their control and that in such circumstances the surety would have been liable for a default of the principal during the term of the bond, unless sooner legally cancelled. Such a concession would in no manner aid the plaintiff because the county officers continued to use the Bank of North Dakota as the county depositary—which they could lawfully do—and the county officers and the officers of the Towner bank acted under the arrangement of May, 1919, without change in purpose or in fact. The county officers ceased to use the Towner bank as a county depositary in May, 1919, and never resumed, or intended to resume, the use thereof as a depositary of public funds.

Had the commissioners re-designated the Towner bank a depositary of county funds on or after December 2, 1920, when all statutory bars to that course were lifted by the initiated law, it is possible that the surety might have sought to invoke legal principles to justify a refusal on its part to continue or re-assume the obligations of the bond. Presumably the condition of the Towner bank had become somewhat precarious on December 2, inasmuch as it was insolvent and closed less than three weeks later. This situation alone illustrates the injustice and unsoundness of the proposition that the plaintiff could rely on an agreement that legally could not and was not intended by any one to give rise to the relation of depositor and depositary, within the terms of the bond, without notice to the defendant surety or the slightest gesture indicative of a change of purpose in that regard.

It has been held by this court that a deposit in a bank pursuant to the depositary laws is a loan of public funds to the bank. Board of Education v. Nelson, 33 N. D. 462, 476, 157 N. W. 664. See also Robertson v. Bank of Batesville, 116 Miss. 501, 77 So. 318; Equitable Surety Co. v. Board of Finance, 186 Ind. 650, 117 N. E. 860; Re Central Bank, 23 Ariz. 574, 205 Pac. 915.

There is much authority for the proposition that title to public funds sought to be loaned to or deposited in a depositary expressly disqualified by statute to receive the same, does not pass to the depositary but remains in the public corporation. 18 C. J. 580. This in no manner conflicts with anything said in Board of Education v. Nelson, supra, where mere irregularities were involved. A deposit or a loan, in violation of statute, is expressly penalized by §§ 3324 to 3364 and by § 3329 the officer who makes such deposit is guilty of a

misdemeanor. McHenry county never consented to any arrangement, subsequent to the taking effect of chapter 147, supra, whereby it would become the creditor of the Towner bank by reason of a deposit of public funds therein. A place where a general deposit of county funds could be made had been designated by the legislature; county officers could not designate another, nor could the board ratify any scheme in effect designating another depositary. Yellowstone County v. First Trust & Sav. Bank, 46 Mont. 439, 128 Pac. 596. See also State v. Thum, 6 Idaho, 323, 55 Pac. 858. A transaction cannot be at once lawful and unlawful; nor can it be lawful or unlawful according to the promptings of the interest of a party. The fact and the law are that no deposit, within the provisions of §§ 3315–3329, was intended or contemplated when the arrangement was made, or at any time thereafter prior to the closing of the Towner bank.

The testimony of the county treasurer in behalf of the plaintiff is unequivocal that the items were delivered for collection only; and his testimony is open to no other construction than that the intention of the parties was that title to the items should not pass to the Towner bank except for that limited purpose. It was not intended that the Towner bank acquire the right to mingle with and use as its own the public funds of McHenry county. Moreover, the execution of such a purpose, had one existed, was wholly unauthorized and would have been a misdemeanor. McHenry county could at any time have reclaimed the items before the rights of other and innocent endorsees had intervened. Commercial Nat. Bank v. Armstrong, 148 U. S. 51, 37 L. ed. 363, 13 Sup. Ct. Rep. 533. "When an instrument is intrusted to a bank for collection, the bank secures no title thereto, and no right to hold it in any other capacity than as agent." National Bank v. Johnson, 6 N. D. 180, 69 N. W. 49. It seems that the error of the trial court consists in the conclusion that there was created the relation of depositor and depositary. Such was not the case. When the arrangement was made, the parties recognized in fact, as necessarily they must in law, that the existing relation of depositor and depositary must cease. Under the new arrangement the Towner Bank became a mere collection agency or clearing house for the convenience and the accommodation of certain county officers.

Suppose that, prior to the taking effect of chapter 147, supra, the

officers of McHenry county had made no deposits of public funds in the Towner bank, but had put all such funds into the only other legal depositary in the county, the Pioneer State Bank. This would have been a violation of its contract, and particularly of § 3321, Comp. Laws, 1913, which requires the county treasurer to maintain substantially the same balance in both when two depositaries have been designated. In such circumstances the Towner bank would have had a cause of action, in some form. Suppose, further, what in fact happened, that the legislature changes the law, creates a new banking institution and expressly requires that all public funds, after a certain date, be deposited therein. Aside from any question of the impairment of the obligation of a contract, can it be seriously contended that the Towner bank would have had a cause of action, against any person or in any form, arising from the fact that McHenry county deposited all its public funds in the Bank of North Dakota and sent all its items directly to that Bank, or cleared them all thru another bank, instead of clearing them thru the Towner bank? The contract with the bank was to safely keep deposits of public funds, subject to draft or check on demand. To keep public funds therein after the new law became operative would have been a misdemeanor, and no breach of contract, of course, could have been predicated on the refusal of the county to use the Towner bank, directly or indirectly, as a depositary of public funds. In short, to create the relation of depositor and depositary between the county and the Towner bank was a legal impossibility at the time the arrangement was made.

We are not concerned with legal niceties involved in any abstract definition of what transactions constitute a deposit. The transaction with the Towner bank, generally referred to in the testimony as a "collection agency" or a "clearing house" arrangement, was not intended by either party to result in a deposit and to give rise to the relation of depositor and depositary. The conduct of the parties and the practical construction put on the agreement by them, both before and after the bank closed, clearly demonstrate the absence of a purpose or intent to create that relation. See Widman v. Kellogg, 22 N. D. 396, 401, 39 L.R.A.(N.S.) 563, 133 N. W. 1020. Regardless, however, of what the intentions of the officers of the Towner bank and of McHenry county may have been when the arrangement was made, it

was entirely beyond their power to create the relation of depositor and depositary by anything they might say or do. This political subdivision of the state could speak and act only in the manner and on the matters prescribed by the legislature in statutes enacted pursuant to constitutional authority.

We are satisfied that the items delivered to the Towner Bank between the second and fifteenth days of December, 1920, were not delivered for deposit and safekeeping "subject to draft on demand" within the letter, spirit or purpose of §§ 3315–3329, Comp. Laws 1913, and of the surety bond executed in behalf of the Towner bank by the defendant and appellant herein. A service was rendered to certain county officers; it "was a convenience" as stated by one of the county commissioners. For this service no charge was made and whatever benefit accrued to the Towner Bank was not at the expense of McHenry county. The real and legal depositary at all times was the Bank of North Dakota. There is no pretense that the county had a right to, or that there was any expectation that the county would, write checks or drafts on a *deposit* in the bank after this arrangement was made. The defendant did not bond a "clearing house" or a "collection agency." It bonded a depositary where county funds were to be deposited "subject to draft on demand." That was the contract. The relation of depositor and depositary ceased to exist, by force of a statute, by the calculated and clearly expressed and understood purpose of all the parties an entirely new relation arose as a result of the deliberate agreement of the Towner bank and an officer of plaintiff, to which the defendant surety was not a party, of which apparently it had no knowledge, and which was not within the contemplation of any one when the bond was executed.

Whether the Towner bank became, in any sense, a trustee is not decided and it is not intended to express any opinion on that subject.

The judgment of the trial court must be reversed and the action dismissed. It is so ordered.

NUESSLE, and BIRDZELL, JJ., and WOLFE, District J., concur.

Mr. Justice CHRISTIANSON being disqualified did not participate;

Honorable CHAS. E. WOLFE, Judge of the Third Judicial District sitting in his stead.

BRONSON, Ch. J. (dissenting). This is an action against a surety upon a depositary bond furnished a county. Trial was had to the court without a jury. Defendant has appealed from a judgment in plaintiff's favor and from an order denying a new trial. The material facts are:—On Jan. 7th, 1919, the plaintiff county accepted a depositary bond in the sum of $30,000.00 furnished by defendant Trust Company in behalf of the First National Bank of Towner, N. D. which had been designated as the legal depositary of funds of plaintiff county. The conditions of said bond read,—"If the said bank is designated one of the depositories of said county under the provisions of said §§ 3315–3329 of the 1913 Compiled Laws of North Dakota, and shall safely keep and repay, according to the letter and intent of said sections, any and all funds deposited with it, subject to draft on demand, together with interest thereon at the rates specified in said application or proposal, then this obligation to be null and void, but otherwise to be and remain in full force and effect." From Jan. 7th, 1919, to July 1st, 1919, the balances of plaintiff county in the First National Bank varied from about $3,000.00 to $120,000.00. On Feb. 25th, 1919, a statute was enacted which required all county funds to be deposited in the Bank of North Dakota within three months from the passage and approval of the act subject to certain provisions providing for postponement of such deposits in the Bank of North Dakota. Laws 1919, chap. 147. The Bank of North Dakota started to function as such in July, 1919. From July 1st, 1919, to March 9th, 1920, the deposits of the county in the Towner bank varied from about $43.00 to $11,000.00. On April 6th, 1920, the deposits of the county in the Towner bank (pursuant to the ledger sheet) were slightly over $75,-000.00. Such deposits then declined until on June 8th, 1920, they amounted to $142.58, since which time they have remained the same. After the Bank of North Dakota started to function the county treasurer of plaintiff, with the approval of the County Commissioners, made an arrangement with two banks in Towner, North Dakota, to facilitate the making of deposits by the county in the Bank of North Dakota. In alternate months the county treasurer would take to the First National

Bank of Towner checks, drafts and other cash items and would secure in exchange therefor a cashier's check payable to the county treasurer. This cashier's check would then be forwarded to the Bank of North Dakota for deposit. The First National Bank would forward the items received from the County Treasurer to its correspondent bank and would receive credit therefor and remuneration at the rate of $2\frac{1}{2}\%$ on daily balances for a period of some seven or eight days or more usually required before such cashier's check was presented for payment. This arrangement avoided the trouble and annoyance of sending small items by the county treasurer to the Bank of North Dakota and was profitable to the bank through the interest received by it upon its credit with the correspondent bank.

On Nov. 2nd, 1920, § 7 of chap. 147, Laws of 1919, was amended and re-enacted through an initiated law so as to eliminate the requirement that county funds should be deposited in the Bank of North Dakota. This act became effective on Dec. 2nd, 1920. Between Dec. 2nd, and Dec. 15th, 1920, the County Treasurer left with the First National Bank, pursuant to the arrangement made, various cash items, checks, etc., and received various cashier's checks therefor amounting to a total sum of $14,796.79. These cashier's checks were sent to the Bank of North Dakota; in due course they were presented but not paid. On Dec. 20th, 1920, the First National Bank became insolvent and went into the hands of a receiver. Defendant did not at any time cancel its bond thus given to plaintiff. In January, 1921, the State's Attorney made demand upon the defendant company for payment of the balance remaining in the checking account and also for the amount of the cashier's checks unpaid. Defendant offered to pay the balance in plaintiff's checking account. Upon the refusal of its offer by plaintiff, defendant deposited such amount in a bank to plaintiff's credit. In May, 1921, pursuant to resolution of the county commissioners, the state's attorney was authorized to commence this action. It was commenced on May 12th, 1921. The trial court found that the plaintiff deposited with said First National Bank between Dec. 2nd, and 15th, 1920, the said sum of $14,796.79, pursuant to the terms of the bond, and that the bank received such amount and agreed to repay it to plaintiff upon demand; that such deposit was made in reliance upon and with full faith and credit in the protection of such bond and that such

deposit would not have been made excepting for such bond; that defendant permitted such bond to remain in force and not cancelled during all the times when such monies were deposited and thereby lead plaintiff to make such deposit and leave its funds with said bank.

In a memorandum opinion the trial court held, generally speaking, that in view of the agreement made between the banks and the officials of the county, the items of funds thus left with the bank constituted a deposit and was so understood by all the parties; that thereby the bank secured the use of such deposits, interest free, until they should be transferred elsewhere either by cashing the cashier's checks through the county itself or through its assigns, thus affording to the bank nearly a two week's average use for such county funds; that these acts involved a free collection service in return for the free use of the money so collected and a leaving of county money with the bank for safe-keeping subject to order and payable, not in the specific sum deposited, but in an equal sum; that these funds so left were payable upon demand, not by some other institution on which it had issued its draft or order, but upon demand being made over its counter on presentation of its own checks or drafts issued by itself on its own general funds. Further, that in any event the bond was in force and effect after the initiated law became effective and that defendant is not in a position to assert that its bond was not then in force.

## Contentions.

Defendant has made some 47 specifications of error involving rulings of the trial court and sufficiency of the evidence to justify the trial court's findings. Defendant asserts that the record facts prove that there was not a deposit made within the conditions of the bond but simply an exchange of checks, drafts and other cash items for the cashier's check of the First National Bank; that the transaction in this regard did not constitute a deposit but merely a purchase of the cashier's check; that the bond covers simply what is commonly known as a checking account and the bond was conditioned to repay money deposited in such checking account subject to draft upon demand; that the depositary law, pursuant to which the bond was given, was impliedly repealed by chap. 147, Laws of 1919; and consequently the bond became in-

operative and did not cover deposits subsequently made in the First National Bank.

Particularly defendant contends that the depositary law covered simply two clauses of deposits; demand deposits and time deposits, not special deposits; that the law does not include acts of the bank.as collection agent nor does it cover liability on the part of the bank upon its cashier's checks; that this deposit or transaction does not come within the commonly accepted definition of the term "deposit," or within the contemplation of the statute or the condition of the bond.

Plaintiff, on the contrary, contends that the deposit was a general deposit; that the cashier's checks were drafts on general funds received by the bank on general deposit; that the bond was never cancelled but was kept as a protection to the county; that the county made deposits in full reliance upon the bond and that defendant is estopped to deny the sufficiency of the bond or liability thereupon.

## Opinion.

Two general questions are presented:—

(1) Was the bond given by defendant in effect when the bank became insolvent?

(2) Were the transactions of the plaintiff county with the bank, concerning the issuance of cashier's checks deposit transaction, within the purview of, and covered by, the bond issued?

We are of the opinion that the first question must be answered through the initiative act of Nov. 2nd, 1920, and the amendment thereof, in the affirmative. Chapter 149, Laws 1919 (The Bank Act) did not expressly repeal the statutory provisions (Comp. Laws 1913, §§ 3315–3329) theretofore existing concerning legal depositaries. This court has heretofore indicated that they did not impliedly repeal such sections (3315–3329) in certain respects concerning the continuance of depositary bonds in force when the bank act became effective. State ex rel. Kopriva v. Larson, 48 N. D. 1144, 189 N. W. 626. We are clearly of the opinion that defendant, in any event, is estopped to deny the continuance of its bond. It is conceded that ever since the Bank Act or its amendment became effective the bank had upon deposit some county funds of plaintiff. Defendant in no manner sought to cancel or

withdraw its bond. In this action it has tendered the amount necessary to pay the amount of such county funds which so remained upon deposit and which are clearly within the terms of its bond. Presumably, defendant has continued to collect its annual premium for such bond.

The second question presents more difficult considerations whether viewed in the light of adjudicated cases or through analytical reasoning. To protect the defendant from liability, reliance is placed upon the original statutory provisions, Sections 3315–3329, Comp. Laws 1913, providing for legal depositaries. It is ably and strenuously urged that these provisions of law must be read into, and considered with, the bond when it is sought to ascertain the contract made and the extent of its coverage concerning county funds. Thus, the claim is made that these provisions contemplate the receiving of proposals for, and the acceptance and approval of, depositary bonds for the following purposes only, namely,—for county funds to be placed in a checking account in a legal depositary upon which checking account interest shall be paid, and, for county funds placed upon time deposits. These statutory provisions provide that the bond shall be conditioned for the safekeeping and repayment of any and all funds deposited in a bank, acting as a legal depositary. Comp. Laws 1913, § 3317. The bond in question was conditioned for the safe-keeping and repayment of any and all funds deposited subject to draft upon demand. We are clearly of the opinion that, although the statutory provisions quoted are to be considered in interpreting the contract made in the bond and, in some respects, pursuant to the terms of the bond, form a part thereof, yet, the failure of the bank and the county to proceed with exactness under the statute does not abrogate the terms of a bond covering specific deposits. Thus, the failure of the county through proposal, or otherwise, to require, or, the failure of the depositary to pay, interest on an open checking account, would not abrogate the liability of a depositary bond securing the payment of such checking account. In other words, a bond furnished and accepted for the purpose of securing a deposit of county funds, and acted upon by the deposit of county funds, is a valid obligation regardless of the lack or absence of initial formalities in the proposing, furnishing and accepting of the same. A bond, so furnished and accepted, may be valid as a common law obligation, when acted upon by the parties, even though it does not observe nor follow statu-

tory requirements. See Dickey County v. Gesme, ante, 272, 199 N. W. 873.

The pertinent question, devoid of technicalities, therefore, is whether the transactions involved in the issuance of the cashier's checks constituted in law a deposit of county funds and as such covered by defendant's bond. It is clear that these transactions did not constitute a deposit upon any checking account in the usual or ordinary acceptance of the term. It is evident that these transactions were not entered upon the books of the bank as a deposit of county funds in plaintiff's favor in the ordinary and usual acceptance of the term. An unusual situation arose. The bank had been a legal depositary of plaintiff. Defendant furnished a bond to the county for such bank. Pursuant thereto, the bank had on deposit for a considerable period of time large amounts of county funds. Then, in February, 1919, the Bank Act was adopted as an emergency act. It required county funds to be deposited in the Bank of North Dakota. But, it required time for the Bank of North Dakota to organize and to be put into operation as a bank. In the meantime, county funds in large amounts remained upon deposit in the bank secured by defendant's bond. Along in July, 1919, as the Bank of North Dakota started to function, withdrawals from the bank involved were made and deposits of county funds of plaintiff were then made in the Bank of North Dakota; nevertheless, the bank retained a deposit of plaintiff's funds in the sum of $171.00; but a little later, so far as ledger record of the bank discloses, some deposits were made of plaintiff's funds in the bank involved; these are explained to be temporary deposits such as seed and feed lien monies; nevertheless, they appeared as deposits to plaintiff's credit; then, later, on Nov. 2nd, 1920, the Initiated Act was adopted; it became effective Dec. 2nd, 1920. In abrogated the requirement that all county funds must be deposited in the Bank of North Dakota. However, plaintiff continued to deposit county funds in the Bank of North Dakota. It employed this method of securing cashier's checks to make its deposits of county funds in the Bank of North Dakota. Its cash, its checks, its money orders, as received, it took to the bank; it made a list of the items; it received from the bank a cashier's check for the amount of such items; these cashier's checks were transmitted by plaintiff to the Bank of North Dakota; so far as the record shows, some of these cashier's checks were received by the

Bank of North Dakota two days after their issuance; some of them four to six days, or longer; plaintiff became and was responsible for any items so given the bank which were not paid; in such event, it took them back and paid the amount thereof; the bank did not keep these items in a special way; as usual with such items, the bank transmitted them to its correspondent bank; it received credit for them; they served to swell its deposit account with such correspondent bank; thereupon, it received a compensation upon its daily balance; thus, it received remuneration; thus, the bank had, continuously, an interval of time between the issuance of its cashier's checks and its payment, averaging from one week to two weeks, when it had on hand, in cash items, or, to its credit in the correspondent bank, the amount of the items representing such cashier's check. How are these transactions to be characterized? Are they to be termed transactions of deposit or transactions of purchase? Did the county buy and intend to buy, daily or frequently, thus, the credit offered by the bank's promise to pay? Or, did the plaintiff intend to deposit its county funds in the bank, temporarily, and the bank intend so to receive such funds; and, in evidence thereof, the plaintiff to receive, and the bank to give, a cashier's check, negotiable in form, and readily acceptable upon final deposit in the Bank of North Dakota? If, in these transactions, the bank had issued a demand certificate of deposit, the answer to these questions might be readily made. Plaintiff asserts that its intention is clearly disclosed in the evidence. It made the arrangement with the bank relying upon the bond of defendant and such was the intention and understanding of plaintiff and the bank. Accordingly, so the county commissioners and other county officials arranged. Of course, following such intention thus expressed, the transaction was a deposit; if the intention were otherwise, manifestly it is not covered by the bond: But defendant maintains that it was not a party to this intention or understanding and the bond may not thus be enlarged. Upon the precise questions proposed counsel have quoted many authorities concerning what constitutes a deposit. It will serve no useful purpose to review the authorities quoted or attempt to precisely define the term "deposit." In a definitional way the term may vary in accordance with application, custom and usage. Concerning the status to be given the transactions in question, defendant relies on the case of Widman v. Kellogg, 22 N.

D. 396, 39 L.R.A.(N.S.) 563, 133 N. W. 1020, and plaintiff, upon the case of Minnesota Mut. L. Ins. Co. v. Tagus State Bank, 34 N. D. 566, L.R.A.1917A, 519, 158 N. W. 1063. In the former case, plaintiff, an express agent, took the funds received by him daily, to a bank and purchased a draft therefor. The bank failed; the drafts were not paid. Plaintiff in that action sought to create a preference for the funds involved and to create the bank as a trustee ex maleficio. The court upheld a preference. This court found that the plaintiff in that case did not keep a deposit account with the bank; that he took his day's receipts to the bank and received in exchange therefor drafts; that the funds were deposited in the sense that they went into the bank but not for the purpose of checking against them or for being placed to his credit. It must be noted that these funds "so deposited" (using the term advisedly) by plaintiff in that case were recognized by this court as "funds deposited" which were entitled to be safeguarded and subjected to a trusteeship ex maleficio.

In the latter case (34 N. D. 566, L.R.A.1917A, 519, 158 N. W. 1063) an insurance company sent to Tagus Bank two notes for collection; the amount of the notes was paid to Blaisdell Bank with instructions to send the amount to the Tagus Bank; the Blaisdell Bank sent its cashier's checks for the amount; the Tagus Bank received and cashed the cashier's check and issued its own cashier's check payable to the insurance company; its cashier appropriated for his own use such cashier's check; the Tagus Bank claimed that the funds were on special deposit; this court denied this claim. This court said:—

"Decision of any question that would arise under a bailment is without the case because the facts stipulated show that no deposit was made with defendant's bank. It had authority to collect and procured collection of these notes. It reduced to cash the checks sent it by its collecting agent, the Blaisdell Bank. In possession of the funds, it became charged with a duty to remit said amount less commissions for its services. It placed these funds on deposit with itself. This is shown by the issuance of its two cashier's checks, which are equivalent to its draft on its general funds, and negatives to the mind of anyone familiar with banking usage any possible contention that these funds were placed on special deposit. The issuance of cashier's checks, necessarily drawn generally against its cash, evidenced that the other side of its

bookkeeping transactions had taken place, viz., that the sums had been deposited in its cash as general deposits subject to check. The purpose of the transaction was to swell its deposits temporarily, and that it might retain the funds until its cashier's checks returned for collection. Otherwise it would have drawn its draft on its correspondent bank and credited its cash with the sums deposited. In either event the effect is the same, except that by its system of cashier's checks it retained the money temporarily pending return of its checks for collection. In either case no relation other than that of debtor and creditor would be created."

Judgment for recovery was upheld.

After full consideration we are of the opinion that the transactions involved herein created the relation of debtor and creditor; they were not transactions upon special deposit, as the term in banking circles is considered; that the transactions may not be classed as a transaction of purchase; particularly so in one respect, for the reason that the items so left with the bank could be turned back to plaintiff and payment secured from plaintiff just the same as if they had been deposited to plaintiff's credit upon the bank's books; that the essence of the transaction may justly be regarded as a deposit and as such subject to the terms of defendant's bond. Otherwise, defendant claims that the failure of plaintiff to present its claim properly to the receiver served to prejudice its rights. Without full discussion of this aspect of the case, we are convinced that defendant in no manner suffered prejudice by plaintiff's action. The judgment should be affirmed.