### REED, COUNTY TREASURER vs. PEOPLE*
#### (No. 1299; Jan. 12, 1926; 242 Pac. 319)

SCHOOLS & SCHOOL DISTRICTS—COUNTY TREASURER—DEPOSITORY ACT —LIABILITY FOR LOSS OF FUNDS BY FAILURE OF BANK.

1. County treasurer and her surety *held* liable on bond to high school district for loss of funds because of her failure to honor warrants issued by district before failure of bank in which deposited, though chairman of district board of trustees told her to keep money to pay warrants held by bank, of which he was cashier; no authority in him to make such request being shown.

2. Bond of county treasurer to use all reasonable skill and diligence to safely keep funds coming into her hands must be construed in connection with Depository Act in deter-

mining her liability for loss of school funds by failure of bank not designated as depositary.

3. County treasurer and surety *held* liable on official bond for loss of school funds by failure of bank, not designated as depositary, under Comp. St. 1920, § 2965, by proper board, of which, under section 2962, probably was district board of trustees, even, if justified in depositing money therein in first instance, where treasurer made no effort thereafter to determine whether bank was safe or to have depositary properly designated as contemplated by section 2969, though bank and its officers had good reputations; purpose of Depository Act being to protect public funds of state by bond.

*NOTE (See Headnotes) (1) 35 Cyc. p. 915 n. 22 (2, 3) 9 C. J. p. 34 n. 75; p. 35 n. 77; 15 C. J. p. 519 n. 83 New; 18 C. J. p. 585 n. 41 (4) 35 Cyc. p. 915 n. 22.

ERROR to District Court, Campbell County; HARRY P. ILSLEY, Judge.

Action by the people, to the use of Campbell County High School, against Ada Reed, Treasurer of Campbell County, and her surety. Judgment for plaintiff and defendant brings error.

*Louis J. O'Marr* and *Gillette & Clark* for plaintiffs in error.

Plaintiff in error proved diligence and care in depositing the money, and thereby complied with the conditions of her bond; 2401 C. S.; Sections 321 and 324 C. S.; State vs. Foster, 5 Wyo. 199; State vs. Gramm, 7 Wyo. 329; Roberts vs. Commissioners, 8 Wyo. 177; the latter section controls if inconsistency or repugnancy be found between said sections; 2 Sutherland's St. Con. 349; U. S. vs. Jackson, 143 Fed. 783; plaintiff in error was not an insurer of the funds; State vs. Gramm, supra; Wilson vs. People (Colo.) 34 Pac. 944; Overton vs. Copeland (Tenn.) 34 S. W. 427; the words, "safely keep" add nothing to the obligations; Roberts vs. Com. supra; the treasurer had no reason to suspect the insolvency of the bank, and acted honestly and with fidelity; 6 C. J. 1119; Wilson vs. People, supra; State vs.

Walsen, (Colo.) 28 Pac. 1119; no depository was ever designated by the school board. All the treasurer could do under the circumstances was to hold the funds and while so holding them her liability was that defined in the Gramm and Roberts cases. The state depository law is inapplicable unless depositories are designated; the Depository Act has not changed the conditions of the treasurer's bond as fixed by Chap. 30 C. S. Section 2969 C. S. refers to funds in excess of what the legally designated depository may receive, and is a part of the Depository Act. The notice referred to in 2969 C. S. is only required (a) when a depository has been designated by the board, and (b) when funds on hand exceed the amount the depository can receive under the Depository Act. It was clearly established in the present case, that the liability of the treasurer was governed by the rule announced in the Gramm and Roberts cases.

*C. A. Kutcher* and *Elwood Anderson* for defendant in error.

The Foster, Gramm, and Roberts cases do not apply. The Gramm case turned on a statute that did not require the treasurer to "safely keep" the public funds. The present statute, Section 321 C. S., was enacted thereafter to supply the defects in the former law. The Roberts case was decided after Sections 321 and 324 C. S. were enacted, but arose under the earlier law, and was decided in harmony with the Gramm case. The depository law effectuating Art. XV Section 7 Const., was subsequently enacted. See Section 2964 C. S. defining the duties of the treasurer and section 2965 and 2970 C. S. These laws, so far as material, are as much a part of the bond in question as if written therein; 7 C. J. 34; the treasurer was negligent and violated her official bond in depositing the funds in an insolvent bank not, designated by the depository law, and in failing to receive security for such deposits. She was negligent in failing to notify the chairman of the governing board that she had funds of the district which could not be placed in

banks under the Depository Law, but on the contrary allowed the bank to hold $10,000.00 of the school moneys for its accommodation, and by falsely advising the board that she had no funds of the school district on hand; she failed to make any inquiry concerning the safety of the bank, which was insolvent during all of the time the money was there on deposit, and for a year prior to its failure; 2965 C. S. 2969 C. S. She violated her duty in holding this money as a "reserve" for the accommodation of an insolvent bank; 2401 C. S. The loss was directly attributable to the failure of the county treasurer to perform her official duties as treasurer thereof. Failure to perform a legal duty is negligence; 29 Cyc. 436; failure to avail one's self of opportunity for investigating the conditions of a depository is negligence; 22 R. C. L. 227; State vs. Reed (Tenn.) 95 S. W. 809; Mecklenburg vs. Beals, 69 S. E. 1032; the evidence established wilful negligence and a violation of the treasurer's official bond. The judgment should be affirmed.

BLUME, Justice.

This action was brought on behalf of the Campbell County High School District in the county of Campbell, against Ada Reed, County Treasurer of said county, and the United States Fidelity and Guaranty Company, her surety on her official bond. The facts are practically undisputed and are substantially, as far as pertinent here, as follows: Mrs. Reed was duly elected to said office at the election of November, 1920, and thereafter and on December 18, 1920, qualified as such and executed a bond, with said surety company as surety, in the sum of $40,000. The bond is in the usual form, in conformity with section 324, W. C. S. 1920, and provides, among other things, that said Ada Reed should, as such county treasurer, perform all the duties of said office and should "with all reasonable skill, diligence, good faith and honesty safely keep and be responsible for all funds" coming into her hands as such officer. The bond was duly approved by the board of county commissioners

of Campbell county and Mrs. Reed assumed charge of said office on the first Monday in January, 1921. She was ex-officio custodian of the funds of said high school district (Sec. 2401, W. C. S. 1920), and from time to time received, by virtue of her office, money belonging to said district, which she deposited in the Citizens State Bank of Gillette, which, however, had not been designated by the board of trustees of said high school district as a depository of such funds; nor was any bond or security ever demanded of it or given by it to said district. During January, 1921, she collected about $13,500 as taxes that belonged to said district. Part of that was disbursed in the payment of war-rants. The balance which she had on hand on March 31st, 1921, was $10,068.86. But about or before that time she discontinued the payment of warrants issued by said district. A number of warrants were issued thereafter up to August 21, 1921. These were presented for payment but were merely registered and not paid, for the alleged reason of want of funds. The amount of these warrants so issued and registered was about $6,648. Part of these were paid before August 21, 1921, but how many of them does not appear. It seems that the district had borrowed $10,000 in 1920 from the Citizens State Bank, with which to defray the expenses of the district during that time. Warrants were issued in that amount. The Citizens State Bank sold these warrants to the First National Bank of Cheyenne, which for some reason, not explained by the record, failed to present them for payment when the taxes came in during January, 1921, and did not in fact present them until after the Citizens State Bank failed and went into the hands of a receiver on August 21, 1921. But the latter bank had evidently some interest in protecting the First National Bank, for Beitler, the cashier, who was also chairman of the board of trustees of the high school district, told Mrs. Reed to keep $10,000 on hand for the purpose of meeting these war-rants and she complied with that request. She told three members of the board of trustees of said district, in March,

1921, upon inquiries made of her by them, that the district had no funds, and explains that in her testimony by stating that she treated $10,000 of the money belonging to the district as a special fund to meet the payment of the warrants just mentioned. No bank whatever had been designated as a depositary for the funds of the district by its board of trustees. Mrs. Reed, notwithstanding the fact that she had $10,000 or more on hand, never asked that such designation be made, and did not notify any member of said board that she had funds making it necessary for that to be done. Some of the members of the board testified that the reason why such designation had not been made, was because the $10,000 of warrants held by the First National Bank of Cheyenne were outstanding; that the funds of the district would, upon presentation for payment thereof, be practically exhausted, and that the board accordingly did not deem it necessary to make such designation in January, 1921, and that none was made up to August 21, 1921, because of the statement by Mrs. Reed that no funds were on hand, and because the board, relying on that statement, believed that the warrants held by the First National Bank of Cheyenne had been paid. The Citizens State Bank, as heretofore mentioned, failed on August 21, 1921. Mrs. Reed testified that the bank had a good reputation and that its officers were men of good standing; that she made, however, no inquiries in regard to it or them, and made no investigation of any kind as to the condition of the bank, not deeming that necessary by reason of her actual knowledge of the circumstances. There is evidence tending to show that the bank was insolvent for a year previous to August 21, 1921. It had on deposit, when it failed, $10,128.32 which belonged to said district. This amount was later reduced to $7,089.83 by reason of dividends paid by the receiver of said bank. The suit herein was brought to recover such balance due said district and judgment was rendered herein against Mrs. Reed and the surety company for $7,089.83.

From such judgment they have brought this case here by proceedings in error.

The plaintiffs in error contend that the county treasurer is not an insurer of the funds that come into his hands, but is responsible only as bailee; and that, under the holding of this court in State v. Gramm, 7 Wyo. 329, 52 Pac. 583, 40 L. R. A. 690, and Roberts v. County Commissioners, 8 Wyo. 177, 56 Pac. 915, Mrs. Reed was absolved from all responsibility when she deposited the funds in a bank that had a good reputation and whose officers were men in good standing in the community; that the depository law passed in 1907 does not affect the foregoing rule so far as this case is concerned, for the reason that Mrs. Reed had no duty under that law until and unless the board of said high school district, as the proper board of deposits thereof, designated one or more depositaries under that law, which was not done in this case. Respondent, on the other hand, contends that the depository act, passed by the legislature of this state in 1907 (now sections 2949-2976, W. C. S. 1920), changed the rule announced in the cases above cited and made the county treasurer an insurer of the public funds held by him, in all cases where they are not deposited in a bank designated as depositary thereof by the proper board of deposits, and cites in support thereof sections 2964, 2965, 2969 and 2970, W. C. S. 1920, which are a part of said depository act. Section 2964, so far as pertinent here, provides as follows:

"Every county treasurer, city treasurer, town trustee and treasurer of a school district, within the state of Wyoming, shall deposit, and at all times keep on deposit for safe keeping, in banks incorporated under the laws of this state and in national banks, doing business in his county, when designtaed as depositories by the proper governing board the amount of moneys in his hands collected and held by him as such treasurer."

Section 2965 provides for applications by banks to be designated as depositaries, and the designation thereof and fixing the rate of interest on deposits, and then proceeds to state ''and no moneys shall be deposited by any such treasurer except in such banks as have been approved by the said proper governing boards.''

Section 2969 provides as follows:

''Whenever funds remain on hand which cannot be placed in the banks of the respective counties of this state under the provisions of this chapter, then the proper treasurer shall immediately notify the chairman of the proper governing board, which said board shall immediately thereupon hold a meeting and if possible secure other banks in the state to hold said funds under the provisions of this chapter. During the time that funds cannot be deposited in the banks entitled thereto under the provisions of this chapter, the proper treasurer shall hold said deposits in safe keeping, and shall be liable on his official bond for such funds so held.''

Section 2970 provides as follows:

''No county, city, town or school district treasurer shall be liable on his official bond for money on deposit in any bank under and by direction of the proper legal authority and in conformity to the provisions of this chapter if said bank has given bond which has been approved as herein provided, except in cases where any loss could have been prevented by the exercise of reasonable care on the part of such treasurer. Nothing in this section contained shall be construed as relieving from any liability any bond given or any collateral deposited under the provisions of this chapter. Nor shall anything in this chapter prevent the proper treasurer from withdrawing any or all funds by him deposited in accordance with this chapter whenever he deems it advisable or to the interests of the public

which he represents, or to pay out money as by law required.''

It is further contended on behalf of the respondent that even though Mrs. Reed was not an insurer of the funds, still that she was so negligent that she must be held liable even under the rule of the Gramm and Roberts cases. We do not think it necessary to determine as to whether or not the depository act was intended to change the rule announced in the cases mentioned; that is to say as to whether or not the county treasurer becomes an insurer of the money, unless deposited in a properly designated depositary. We think that the evidence in the case was sufficient to warrant the court in holding that Mrs. Reed did not ''with all reasonable skill and diligence'' safely keep the funds that came into her hands, in compliance with the provisions of her official bond. The testimony tends to show that the money, or at least a large portion thereof, would not have been in the bank at the time of its failure if Mrs. Reed had honored the warrants issued by the school district against it. The fact that Beitler told her to keep the money in order to meet the payment of the warrants held by the First National Bank of Cheyenne, might be a moral, but it certainly was not a legal excuse, for he is not shown to have had any authority whatever to make such request of her, and when she complied therewith she did so upon her own responsibility.

Even under the rule above mentioned, we cannot ignore the existence of the depository act, and the bond involved herein must be construed in connection therewith. 9 C. J. 34. Mrs. Reed kept the money in the Citizens National Bank in direct defiance of the provisions of section 2965, supra, which in no uncertain terms provides that ''no moneys shall be deposited by any such treasurer except in such banks as have been approved by the said proper governing board.'' Speaking of a similar provision, the Supreme Court of North Dakota, in the case of Slope County

v. Douglass, 194 N. W. 385, decided in 1923, said as follows:

"Chapter 56 of the laws of 1921, in prescribing the qualifications for depositaries of public funds, lays down certain definite requirements, principal of which is the furnishing of a bond. It expressly makes all state and national banks complying with the provisions of the act legal depositaries, but it forbids the deposit of money therein until a bond is furnished in an amount at least equal to the largest deposit that may at any time be in the depositary. Upon the record before us, it is clear that the banks in question had not complied with the law, and that during the period of their non-compliance the treasurer deposited $24,576.51. As to the amount so deposited, we deem it to be clear that the treasurer is liable personally."

Even if we concede that Mrs. Reed was justified in depositing the money in the first instance in the bank aforesaid, in view of the fact that no depositary had been designated by the proper board of deposit—which in this case, under the provisions of section 2962, W. C. S. 1920, probably consisted of the board of trustees of the high school district—we do not think that she was justified in keeping the money there until August 21, 1921, without any effort on her part to determine whether the institution was safe or not, and without any effort whatever to have a depositary properly designated. The depository act of 1907 evinces at least, if nothing more, the purpose that the public funds of the state shall be protected by a bond, and when we further consider section 2969, supra, in that light, it would seem clear that it is made the duty of the treasurer, when he has public funds on hands for which no depositary had been designated, to call the fact to the attention of the chairman, or perhaps, in some cases, to the attention of some other member or members of the

board, in order that he may not be chargeable with dereliction in duty. It can hardly be, in view of the specific prohibition of section 2965 above mentioned, the clear intent of the law just mentioned, and the provisions of section 2969, supra, that a treasurer should be able to absolve himself from responsibility for loss of public funds by merely showing that the bank in which he makes a deposit, in violation of a specific prohibition of the statutes, had a good reputation and that its officers were men of good standing in the community. The whole intent and purpose of the depository law would be subverted thereby and the door would be opened wide for methods and ways to make that law largely nugatory. We think, accordingly, that the judgment of the district court, holding the county treasurer in this case and her surety responsible for the loss of the funds in this case, must be upheld.

It is accordingly ordered that said judgment be affirmed.

*Affirmed.*

POTTER, C. J., and KIMBALL, J., concur.