MERCER COUNTY, a Political Subdivision of the State of North Dakota, and Paul Leupp, Auditor of Mercer County, Appellants, v. H. J. ROBERTS and State Bonding Fund of the State of North Dakota, Respondents.

(214 N. W. 617.)

**Counties — county treasurer liable on official bond for excess deposits.**

1. Where claims due a county are settled under the direction of the county commissioners by taking in lieu thereof certificates of deposit issued by a solvent bank which is a legal depositary for county funds; and where these certificates of deposit come into the possession of the county treasurer and are under his direction and control when due; and where the amount of such certificates of deposit when taken with the amount of other funds of the county on deposit with such legal depositary exceeds the amount permitted to be deposited with such bank; and where the said county treasurer does not check out or otherwise reduce the total amount on deposit to the amount authorized by law for deposit when he could do so, but permits the bank to keep on deposit this excess amount; and the bank thereafter becomes insolvent with this excess amount on deposit; it is such a neglect of official duty on the part of the county treasurer, and such a default in his legal obligations to the county as to render him liable upon his official bond for the excess of the deposits.

**Counties — state bonding fund liable as surety — negligence of county treasurer — excess deposits.**

2. Under the foregoing state of facts it is held that the State Bonding Fund, being the surety for the aforesaid county treasurer, is liable to the county for the excess of deposits in such bank over and above the amount authorized to be deposited in the bank.

Opinion filed June 25, 1927.

Counties, 15 C. J. § 196 p. 519 n. 94 New.

Appeal from the District Court of Mercer County, *Berry*, J.
Reversed.

David Schwartz, for appellant.

"A county treasurer has no authority to accept anything other than money in payment of taxes, excepting in such instances, as the statute expressly otherwise provides." Eggleston v. Plowman, 207 N. W. 981.

"The county is not bound by the wrongful act of the county treasurer in allowing deposit to remain in a bank though county commissioner and state examiner do not object." Yellowstone County v. First Trust Bank, 46 Mont. 439, 128 Pac. 596.

"The depositing officer may refuse to make the deposit with the bank designated where the designation is illegal." 18 C. J. 581; Clay County v. Simonsen, 1 Dak. 403, 46 N. W. 592.

On appeal from the whole judgment where the sufficiency of the evidence is challenged, the supreme court has a right to pass upon all orders made by the court and to grant judgment notwithstanding the verdict. Thress v. Zemple, 42 N. D. 599.

"The government can transact its business only through its agents; . . . the utmost vigilance would not save the public from serious losses, if the doctrine of laches can be applied to its transactions. It would, in effect, work a repeal of its securities." United States Fidelity & G. Co. v. State, 81 Kan. 660, 26 L.R.A.(N.S.) 865, 106 Pac. 1040.

*Crum & Crum,* for respondent.

"As the municipality itself is created by charter or by statute and has no powers other than those conferred upon it by its charter or by statute, it cannot waive the giving of the statutory notice." 4 Dill. Mun. Corp. ¶ 1613, p. 2815.

BURR, J. Plaintiffs sue the defendants on three causes of action. The pleadings, findings, and orders ignore any right or claim on the part of the plaintiff, Paul Leupp. All through the record reference is made simply to the plaintiff, Mercer county; hence when we use the term plaintiff we mean Mercer county only.

The defendant H. J. Roberts was the treasurer of Mercer county for the period between May 2, 1921, and December 31, 1924, and the defendant state bonding fund was the surety on his official bonds—the bonds being in the sum of $50,000 for each term. These bonds had the usual conditions and agreements to the effect that the treasurer would faithfully discharge his duties according to law, render a proper account of all public funds which he should receive as county treasurer, pay over and deliver the same as required by law, and if he should make default the State Bonding Fund would make good the loss to the extent of the bond.

For the period beginning prior to October 24, 1921, and continuing to December 7, 1923, the First State Bank of Hazen was a legal depositary for the funds of Mercer county in an amount not to exceed $6,000 and had furnished a bond to the county in such sum. This bank, being unable to meet its obligations, closed its doors on the 7th day of December, 1923; and has remained closed ever since.

For the period beginning prior to April 18, 1921, and continuing until August 18, 1923, the Farmers Bank of Mercer County was a legal depositary for the funds of Mercer county in an amount not to exceed $10,000, and furnished a bond in the sum of $10,000 for the repayment of any sum so deposited. This bank became insolvent and closed its doors on August 18, 1923.

The undisputed testimony shows that in the year 1918, and again in the year 1920, Mercer county made loans to different farmers for seed and feed, taking seed liens as security. During the years 1921 and 1922, a large number remained uncollected and the county commissioners instructed the state's attorney to collect as many of these liens as possible, in co-operation with any bank in the county that would advance the money, and deposit the money in that bank in the name of the county, on certificates of deposit. It appears the bank would take from the debtor notes and such security as it could get and then issue a certificate of deposit for the sum represented by the note and security,

delivering the same to the state's attorney. The treasurer would then issue a satisfaction of the lien to the extent of the certificate received. The amount thus represented by the certificate was credited to the county and deposited in its name. All such certificates of deposit were delivered to the defendant Roberts as county treasurer, some time prior to the 31st of December, 1922. So far as this arrangement was concerned, the defendant Roberts had no active part in these collections, except to issue the satisfactions; and he testifies he took the certificates of deposit from the state's attorney "for collection."

The undisputed testimony further shows that at the time the First Bank of Hazen closed its doors there was on deposit in the bank in the name of the county, including the deposits on account of seed liens, the sum of $8,787, and interest at 6 per cent, represented by some fourteen certificates of deposit as follows:

| Number. | Date. | Due. | Amount. | Ex. No. |
|---|---|---|---|---|
| 1965 | Nov. 21, 1922 | Three months after date ... | $2,000.00 | 12 |
| 1924 | Sept. 7, 1922 | Jan. 1, 1923 | 427.25 | 13 |
| 1900 | July 28, 1922 | Dec. 1, 1922 | 316.08 | 14 |
| 1880 | " 3, 1922 | 15 days after date | 940.00 | 15 |
| 1820 | Apr. 24, 1922 | On demand | 500.00 | 16 |
| 1819 | " | " | 500.00 | 17 |
| 1818 | " | " | 500.00 | 18 |
| 1817 | " | " | 647.31 | 19 |
| 1771 | Feb. 25, 1922 | 12 mos. after date | 1,526.90 | 20 |
| 1745 | Jan. 30, 1922 | "        " | 143.65 | 21 |
| 1664 | Nov. 3, 1921 | Dec. 1, 1922 | 205.30 | 22 |
| 1651 | Oct. 24, 1921 | Dec. 1, 1921 | 282.19 | 23 |
| 1624 | Sept. 3, 1921 | Oct. 1, 1922 | 220.00 | 24 |
| 1623 | Sept. 2, 1921 | " | 223.70 | 25 |
| 797 | Jan. 27, 1919 | Dec. 1, 1919 | 354.62 | 35 |

$8,787.00

And of this sum $3,817.86, represented by exhibits 16 to 21 inclusive, was deposited by defendant Roberts himself, evidently on the dates of the certificates.

The undisputed testimony also shows that when the Farmers Bank of Mercer county closed its doors in August, 1923, there was on deposit in the name of the county the sum of $13,078.13, represented by eleven certificates of deposit, as follows:

| Number. | Date. | Due. | Amount. | Ex. No. |
|---------|-------|------|---------|---------|
| 2140 ........... | March 1, 1923 | Six months ............. | $1,078.13 | 1 |
| 2139 ........... | " | On demand ............. | 500.00 | 2 |
| 2138 ........... | " | " " ............. | 500.00 | 3. |
| 2137 ........... | " | " " ............. | 500.00 | 4 |
| 2136 ........... | " | " " ............. | 500.00 | 5 |
| 2135 ........... | " | Six months ............. | 1,000.00 | 6 |
| 2130 ........... | " | " " ............. | 5,000.00 | 7 |
| 2131 ........... | " | On demand ............. | 1,000.00 | 8 |
| 2132 ........... | " | " " ............. | 1,000.00 | 9 |
| 2133 ........... | " | " " ............. | 1,000.00 | 10 |
| 2134 ........... | " | " " ............. | 1,000.00 | 11 |

$13,078.13

—all representing collections made by the state's attorney.

The testimony further shows that up to the first day of March, 1923, the defendant Roberts had no difficulty in clearing checks or drafts drawn on either of these banks, except as to certain personal checks drawn by some taxpayers; that between February 17th and 28th, 1923, he sent these certificates of deposit received from the state's attorney and from the former treasurer, and those he had received himself, to the two banks for collection; that not hearing from the banks he went to interview them on the 1st day of March, 1923; and though he then knew the banks had on deposit in the name of the county amounts far in excess of the bonds given by the banks, and though all of the certificates of deposit were then due, he did not collect the same nor withdraw the funds he had deposited, but took back with him some cash and the certificates of deposit hereinbefore set forth. He surrendered to the Farmers Bank at that time the old certificates of deposit and took the new certificates of deposits exhibits 1 to 11 in lieu thereof. The certificates of deposit issued by the First State Bank of Hazen to defendant Roberts, aggregating $3,817.86, and to the state's attorney, and former treasurer, aggregating $4,969.14, were brought back without renewal. There is nothing in the record to show any attempt on the part of the defendant Roberts after March 1, 1923, and before the banks closed on August 18, 1923, and December 8, 1923, respectively, to collect the certificates of deposit though all were past due, or even to check on these banks in order to reduce the amounts on deposit; nor is there anything in the record to show either bank was insolvent before it closed its doors. During all of this time he had all these certificates of deposit exhibits

1 to 25 and 35 in his possession and all of them except exhibits 12 to 15 inclusive, and 22 to 25 inclusive, and 35 were delivered to and received by him in his own personal negotiations with the banks.

The first cause of action is not in issue on this appeal. The second cause of action sets forth the claim of Mercer county against the treasurer for the sums on deposit in the First State Bank of Hazen, in excess of the $6,000 bond furnished by the bank, with interest. The third cause of action sets forth the claim of Mercer county against the treasurer for the amount on deposit in the Farmers Bank of Mercer County in excess of $10,000 bond furnished by the bank, with interest. Both causes of action state that the alleged defaults of the Treasurer were not discovered by the board of county commissioners until on or about the 30th day of April, 1924, and at that time they made demand on him for the funds deposited in the banks in excess of the bonds given by the banks; that these demands were refused and that thereupon on the 30th day of April, 1924, plaintiff presented a claim on each cause of action to the commissioner of insurance of this state, and demanded payment of the sum of $4,357.71 as the excess deposits with the First State Bank of Hazen, and $4,712.88 as the excess deposits in the Farmers Bank of Mercer County; and that the action was not commenced until after sixty days from the date of the demand on the commissioner of insurance. The defendants answer separately, but in the same manner. The answers admit various allegations, and deny the remainder. This general denial puts in issue the form of notice, and the date of the discovery of the alleged defaults. In addition there are affirmative defenses to the effect that these excess deposits were not made by the defendant, the county treasurer, but by the state's attorney and other officials of the county; that they never came into the possession of the said county treasurer; that on the 15th day of February, 1924, the plaintiff filed with the receiver of the insolvent banks proof of claim comprising the certificates of deposit in issue, and the said claim was allowed by the receiver and his certificates issued therefor which certificates have been "accepted and ever since has (have) been retained by the plaintiff, Mercer county, in settlement and liquidation of such claim . . . and that the plaintiff has elected to pursue his remedy against the receiver of said bank and should not in equity and good conscience, be permitted to maintain this action." The jury found for the

defendants on the second cause of action—the claim against the First State Bank of Hazen—and plaintiff moved for judgment notwithstanding the verdict or for a new trial, which motion was denied by the court. The jury found for the plaintiff on the third cause of action—the claim against the Farmers Bank of Mercer County—and the defendants moved for judgment notwithstanding the verdict, which motion was granted by the court. The plaintiff appeals.

The issues as framed present three main questions for determination: First, Did these "excess deposits" ever come into the possession and under the control of the defendant Roberts as county treasurer? Second, did the county of Mercer present its claim to the commissioner of insurance within the time prescribed by law? Third, Does the acceptance of the receiver's certificate for the total amount on deposit in each bank preclude the plaintiff from recovery on the bond?

The statement of facts shows the dates when the certificates of deposit were issued and for convenience we have given the exhibit numbers as they were introduced in evidence. In the complaint the certificate of deposit numbered 1771, as issued by the First State Bank of Hazen, was by mistake numbered 1922. If we take the testimony of the defendant Roberts, we find he states, with reference to the certificates of deposit issued by the First State Bank of Hazen, that exhibits 16 to 21, inclusive, amounting to $3,817.86, represent money which he deposited in the bank as county treasurer himself, and he took therefor these six certificates,—four, amounting to $2,147.31 and all dated April 24, 1922, being due on demand; the other two, dated earlier being due in twelve months. In the meantime there were also on deposit in the same bank exhibits 22 to 25, inclusive, and 35 all deposited before he made his personal deposits, and he also received and accepted from the state's attorney exhibits 12 to 15. In other words, he received from the state's attorney eight certificates of deposit aggregating $4,614.52 without interest, and No. 35 from the former treasurer. All of these he had in his possession not later than December 31, 1922. Of the certificates of deposit received from the state's attorney it will be noted all became due or were past due when he received them except exhibit 12, and this exhibit became due on the 25th day of February, 1923. In his testimony (p. 153 tr.) he says that as far as possible he governed his deposits in these banks "by whatever deposits might be made by the state's

attorney with reference to the amount of the bond," and that "at the time I qualified as county treasurer there were considerable deposits in each of these banks, these two banks." The evidence is entirely silent. as to any attempt on his part to check against any of these exhibits. prior to the first day of March, 1923. He says he had no difficulty up to that time in clearing items except in the case of some personal checks issued by tax payers. There is nothing to indicate but what he could have collected all of the money while he had possession of the certificates. Not only that, but his own testimony shows he took with him the certificates and other items and presented them to the bank on March 1, 1923, getting cash on some, and bringing back with him and keeping in his possession all of the certificates which are set forth here as exhibits. The testimony shows that he did not refuse to take them from the state's attorney or former treasurer, and there is nothing to indicate but that the bank had ample money on hand to cash these certificates when he received them if he had insisted on it. There is absolutely no testimony showing that the bank was insolvent before it closed its doors. Whether exhibits 12 to 25 and 35 were renewals of previous certificates is not stated, but it is clear the treasurer received and accepted these certificates, exercised control over them, issued satisfactions of the liens, except possibly as to No. 35, six of them were the results of his own activities, and he made his own personal dealings. with the bank on the 1st day of March, 1923, respecting all of them. With reference to the third cause of action, exhibits numbers 1 to 11 inclusive, being the certificates issued by the Farmers Bank of Mercer County, the testimony of the defendant Roberts shows that on the 1st day of March, 1923, he took to that bank its evidences of indebtedness and on that day had them turned into the certificates of deposit known as exhibits 1 to 11, inclusive. He testifies he received them from the bank himself. It must be clear therefore from the testimony of this defendant that these so-called "excess deposits" came into his possession and were under his control; that he could have cashed them and could thus have reduced the amount, but did not do so. The defendant made no showing that he could not have cut them down to the amount of the bond, nor is there any testimony showing the banks refused to cash them. The uncontradicted testimony shows (p. 158 tr.) that there were no conditions attached to the certificates of deposit "except that the seed

liens, if they were in full payment of the seed liens, were to be satisfied."
Evidently the treasurer considered they were paid in full and the money
received for he issued the satisfactions. As said in Slope County v.
Douglas, 49 N. D. 1026, 194 N. W. 385, "where . . . public funds
were on demand deposit in banks which did not meet the requirements
of the law, and where the deposit was allowed to remain in the non-
complying banks until they failed three months afterward, the treasurer
and his bondsmen are liable for the loss sustained." In the case cited
it is shown, at page 1031, "there is nothing in this record to show that
the demand funds in the two banks in question—amounting to some
$70,000, could not have been promptly withdrawn and placed in a
legal depositary had there been an attempt so to do. The banks were
then open and continued to do business for more than three months
thereafter. We cannot presume that the banks were insolvent. . . ."

With reference to the second question,—whether the county of
Mercer presented its claim to the commissioner of insurance within
the time prescribed by statute,—we find from the testimony that some-
one presented a claim to the receiver of the banks on the 15th day of
February, 1924. There is no showing as to who this "someone" was.
We do not know from the evidence whether it was the chairman of the
board of county commissioners, the county auditor, or the county
treasurer. All were witnesses, but nothing was introduced on this point.
The treasurer was custodian of the funds; he had these certificates in
his possession at the time; the claim presented was for the amount of
these certificates; and in the absence of proof to the contrary the pre-
sumption is that the county treasurer presented the claim. If the
county treasurer, being the one responsible for the "excess," presented
the claim, his knowledge of an excess is not chargeable to the county.
If it were, the knowledge of any default on the part of the treasurer
could be used to prevent recovery on his own bond. Three of the county
commissioners testified, and they all showed that the only official notice
the board received was a letter written to them by the state's attorney
under date of April 30, 1924, which letter was received at the meeting
of the board on the 6th day of May, 1924. One of the commissioners
does admit that some time prior thereto he had a conversation with the
treasurer in the treasurer's office regarding "money that was placed in
the bank in excess of the bonds." It is true the defendant Roberts says

he went before the board at the January meeting, and told them about a certificate of deposit and a check he had issued, but it is clear from the testimony that this had reference to the first cause of action. The undisputed testimony shows that the first time the board of county commissioners as a board, received notice was at the May meeting in 1924, and on that date the board ordered the county auditor to notify the commissioner of insurance. Exhibit 27 is the letter received from the state's attorney regarding the claim, and exhibit 28 is the copy of the minutes of the county commissioners showing their action. The state bonding fund in its letter, admits the receipt of claim, but nowhere in this letter is there any objection to the form of the notice. It merely asks the county auditor to make demand on the treasurer. The auditor made such a demand, and later the manager of the state bonding fund wrote stating the claim had been rejected. The notice of rejection says nothing about the insufficiency of the notice or that the claim was not made in time. The holding of this court on these points as set forth in the case of Bowman county v. McIntyre, decided this term, [post, 623, 214 N. W. 916], is applicable to the situation here and so we find the notice was sufficient both as to form and as to time.

This leaves but one question to be determined—does acceptance of the receiver's certificate preclude the plaintiff from suing on the treasurer's bonds? As shown in the case previously cited, this is no defense.

The evidence being as hereinbefore stated, the district court erred in not granting the motion of the plaintiff for judgment notwithstanding the verdict on the second cause of action, and in granting defendants' motion for judgment notwithstanding the verdict on the third cause of action. The judgment of the lower court is reversed, with instructions to enter judgment for the plaintiff and against the defendants on the second and third causes of action as prayed for in the complaint to the extent of exhibits 1 to 25, inclusive, and No. 35 with interest, in so far as the same are in excess of the bonds furnished by the banks as county depositaries and with costs to the plaintiff.

While there is nothing affirmatively stated in the answers to raise an issue suggested and referred to in the briefs to the effect that the treasurer could not have collected from the banks because of their actual insolvency at the time he received the certificates of deposit from the state's attorney, nevertheless defendants' brief appears to assume such

to be the fact, and while no evidence was introduced in an attempt to prove such insolvency at that time, and while we express no opinion as to the validity of such defense, yet it may be that proper application can be made to the trial court for leave to present the issue squarely. Therefore this judgment stands without prejudice to the right of the defendants to make such application to the trial court.

BIRDZELL, Ch. J., and BURKE, CHRISTIANSON, and NUESSLE, JJ., concur.